Mastellar v. Atkinson.

---

No. 19,264.

IDA MASTELLAR et al., *Appellants,* V. SARAH ATKINSON et al., *Appellees.*

SYLLABUS BY THE COURT.

WILL — *Interpretation* — *Life Estate in Wife* — *Fee in Son Charged with Payment of Certain Legacies.* In the will of one who died and left surviving him a wife, one son and six daughters, he devised a life estate to his wife and added that after her death "I will and desire that the said property shall revert to my beloved son Artie Atkinson. provided that in such event he shall pay to each of his sisters, Annie Hendrickson, Nancy Hooks, Ida Mastellar, Sarah Jackson, Lydia Wilson, and Daisy Teach, the sum of two hundred dollars ($200.00). Said two hundred dollars to be paid in yearly payments of sixty-six and two-thirds dollars ($66.⅔) to each sister as above enumerated.

The first payment to be made on the first day of September, following the first day of April after the death of my wife, Ellen Atkinson."

In a proceeding to determine the ownership of the property and to partition the same it is *held* that the fee of the land vested in the son upon the death of the testator but that the enjoyment of possession is postponed until the life estate is terminated, and that the son takes the fee charged with the payment of the legacies given to the daughters of the testator, and that any one who succeeds to the estate and interest of the son prior to the completion of the payments takes the land subject to such charges.

Appeal from Lincoln district court; DALLAS GROVER, judge. Opinion filed February 6, 1915. Affirmed.

*S. N. Hawkes,* of Stockton, and *W. W. McCanles,* of Kansas City, for the appellants.

*John J. McCurdy,* of Lincoln, and *Z. C. Millikin,* of Salina, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action involves the interpretation of a will and the ownership and partition of a quarter section of land described in the will. George Atkinson, who owned the land, died in 1904, and left surviving him his widow, one son and six daughters. In the will which he made he devised a life estate to his widow, and further provided that after her death:

"I will and desire that the said property shall revert to my beloved son Artie Atkinson. provided that in such event he shall pay to each of his sisters, Annie Hendrickson, Nancy Hooks, Ida Mastellar, Sarah Jackson, Lydia Wilson and Daisy Teach, the sum of two hundred dollars ($200.00). Said two hundred dollars to be paid in yearly payments of sixty-six and two-thirds dollars ($66.⅔) to each sister as above enumerated. The first payment to be made on the first day of September, following the first day of April after the death of my wife, Ellen Atkinson."

Artie Atkinson, the son of the testator, died in 1912, and left surviving him Sarah Atkinson, his wife, and

two children.   This action was brought by the daughters of the testator against the heirs of Artie Atkinson to recover the land and partition the same among the plaintiffs.   The defendants answered claiming to be the owners of the land subject to the life estate devised to the widow of the testator and to the payment of certain sums of money which the will directed should be paid to the plaintiffs.   A reply to the answer was filed, which was subsequently withdrawn and a demurrer to the answer filed.   The demurrer was overruled and, the plaintiffs failing to plead further, a trial was had which resulted in a finding in favor of the defendants and a judgment that the plaintiffs had no interest or title in the land.

The purpose of the testator is reasonably manifest. Evidently he undertook to make a complete disposition of his entire estate.   A life estate in his land was given to his wife, and then he proceeded to make a disposition of the fee.   While some unusual words were employed by the scrivener, who was evidently without legal training, it is reasonably clear that it was the intention of the testator to give the fee to his son, Artie, charged with the payment of the legacies given to the daughters of the testator.   (*Donohue v. Donohue,* 54 Kan. 136, 37 Pac. 998.)   Nothing in the will indicates a purpose to give the fee of the land to either the widow or the daughters, nor that the daughters should have more than the sums of money which the son was directed to pay to them.   All the inferences derivable from the language in the will proceed on the theory that the entire estate is given to the members of the testator's family, and under such circumstances the presumption is that he intended to dispose of his entire estate and not to die intestate as to any of his property.   (*Singer v. Taylor,* 90 Kan. 285, 133 Pac. 841; *Twist v. Twist,* 91 Kan. 803, 139 Pac. 377.)   In giving the land to his son the testator used the expression, "I will and desire that the said property shall revert to

my beloved son," while in the earlier provision the words, "give, devise and bequeath," were employed. The word "will" is mandatory, comprehensive and dispositive in its nature, is broad enough to dispose of both real and personal property, and is as effective as the expression, "devise and bequeath." The word "desire," although frequently used as a precatory term, is sometimes used as a direction or command. (*Harrison v. Langfitt,* 158 Iowa, 479, 139 N. W. 1076; *Brasher et al. v. Marsh et al.,* 15 Ohio St. 103; *Wood v. Camden Safe Deposit Co.,* 44 N. J. Eq. 460, 14 Atl. 885; *Appeal of City of Philadelphia, Trustee, &c., of J. M. Eisler,* 112 Pa. St. 470, 4 Atl. 4; *Oyster v. Knull,* 137 Pa. St. 448, 20 Atl. 624, 21 Am. St. Rep. 890; *McMurry v. Stanley,* 69 Tex. 227, 6 S. W. 412; *Collins v. Williams,* 98 Tenn. 525, 41 S. W. 1056.)   Used here in connection with the word "will," and where it is evident that the testator had undertaken to dispose of his entire estate, the word must be taken as mandatory rather than as advisory.

The word "revert" was evidently not used in its technical sense.   It was not employed to express the idea that the property should be turned back to the son, as it had never been owned or held by him.   In a loose way the term "revert to" is sometimes used as the equivalent of "go to," and the language of the will, taken together, indicates that the term was used to designate the person to whom the testator wished the land to be given.   It has been so interpreted in a number of cases by other courts.   (*Johnson v. Askey,* 190 Ill. 58, 60 N. E. 76; *Estate of Bennett,* 134 Cal. 320, 66 Pac. 370; *Bates v. Dewson,* 128 Mass. 334.)

It is contended that the use of the phrase "provided that in such event" indicates that the testator was not making a mandatory provision.   The proviso does not imply a doubt that the son might not accept the land with the condition attached, nor that the testator had in mind a contingency that the fee would not vest at his death.   The term as used in the will means

no more than that, having given the land to the son, he had required the payment of specific sums to his daughters and charged the estate devised with such payments. If it be necessary to show an acceptance of the devise by the son it is supplied by an averment in the answer to the effect that the son took and received a vested remainder in fee in the land, and is now the owner thereof, and on the trial the court found these averments in the answer to be true. The title to the land vested in the son at the death of the testator, and the rights of the daughters to the legacies also vested at the same time, to be paid by the son in accordance with the directions in the will. The son was not entitled to the possession of the land until the widow died and the life estate had ended, and no part of the legacies were to be paid until the first day of September following the first day of April after the death of the widow. These provisions, however, did not postpone the vesting of the title in the son, and as the will does not provide a limitation over in case of nonpayment, the legacies required to be paid by the son became fixed charges upon the land devised to him. Any one who succeeds to the interest of the son prior to the making of the payments takes the land, of course, subject to these charges.

There is complaint of the ruling of the court which refused leave to plaintiff to file an amended reply. The application was not made until some time after the case had been submitted and the judgment had been rendered. No sufficient grounds for opening the case at that time were stated, and in any case it must be held that the refusal was not an abuse of discretion.

The judgment is affirmed.