No. 33,388

DAN SELZER, *Appellee*, v. WILLIAM J. SELZER, JR., *Appellant*.

(69 P. 2d 708)

Opinion filed July 10, 1937.

*R. E. Melvin* and *George K. Melvin*, both of Lawrence, for the appellant.
*Edward T. Riling* and *John J. Riling*, both of Lawrence, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action for money judgment brought by Dan Selzer against his brother, William J. Selzer, Jr., to have the judgment declared a lien on real estate devised to the defendant and to foreclose the lien. Plaintiff prevailed, and defendant appeals. Plaintiff cross-appeals from that portion of the judgment only which denied recovery of an item of interest.

The controversy grows out of provisions in a will executed by the father of plaintiff and defendant. Their father died on November 20, 1924. The will was admitted to probate February 2, 1925. This action was commenced January 10, 1936. The estate is still in process of administration. The executor named in the will was made a party defendant, but defaulted and died prior to the trial. No successor had been appointed. The pertinent portions of the will provide:

"Item 1: I give, devise and bequeath to my beloved wife, Anna Selzer, all of my property, both real and personal, during her natural life, and at her decease to be divided as follows:

"Item 2: (Description of land devised to the son, William J. Selzer, Jr.)

"Item 3: (Description of land devised to the son, Dan Selzer.)

"Item 4: My son William J. Selzer, Jr., to pay to my son Dan Selzer the sum of fifteen hundred dollars ($1,500), which amount is one half of the value of buildings on land willed to my son William J. Selzer, Jr.

"Item 5: All my personal property to be divided equally between my two sons, William J. Selzer, Jr., and Dan Selzer."

Certain facts not heretofore mentioned but contained in the findings of the court were:

"After their father's death the two sons occupied the respective pieces of land devised to them and paid their mother rent, agreeable with the agreements she had with them, respectively. The mother lived on the tract which she rented to William J. Selzer, Jr., but in a different building from that which he occupied with his family. She paid the taxes on the whole tract up to the time of her death, which occurred in April, 1935.

"Some three years after the death of the father the two sons had a conversation in which William J. Selzer, Jr., advised his brother, Dan Selzer, that he was going to accept the land devised to him by their father, but that he did not intend to pay him the $1,500, the payment of which was provided for in item four of their father's will.

"Since the mother's death, William J. Selzer, Jr., has occupied the tract devised to him, claiming to own the same, free and clear of any alleged claims which Dan Selzer may have against it.

"It was the intention of the testator, William J. Selzer, Sr., when he executed item four of his will, to devise the land described in item two of his will to William J. Selzer, Jr., and to charge said land with the payment of $1,500 to Dan Selzer."

The conclusions of law were as follows:

"1. William J. Selzer, Jr., has elected by his conduct and pleadings to accept the devise made to him of certain real estate described in item two of his father's will.

"2. The land devised to William J. Selzer, Jr., is charged with the sum of $1,500 to be paid to Dan Selzer.

"3. The cause of action set out in the plaintiff's petition is not barred by the statute of limitation."

The trial court subsequently concluded that by reason of the acceptance of the devise defendant was indebted to plaintiff in the sum of $1,500, rendered a personal judgment for that amount, and ordered the lien foreclosed.

Defendant first contends the trial court erred in ruling the will created a charge on the property devised to him. The question is, What was the intention of the testator? What was really in his mind when he made the will? This must be determined from a construction of the entire will. (*Brown v. Brown,* 101 Kan. 335, 166 Pac. 499; *Bierer v. Bierer,* 121 Kan. 57, 245 Pac. 1039.) The father made the customary provision for payment of his debts and funeral expenses. Then he provided for his wife by devising to her a life estate. He then stated just how he desired to have the remainder of his estate divided. He devised certain lands to his son William, and certain other lands to his son Dan. It clearly appears he was endeavoring to make an equal division of the real and remaining personal property between his two sons on the basis of value. It appears that in order to make such an equal division of the real estate it was necessary to take into account the buildings on the land devised to William. In his judgment they were worth $3,000. He therefore concluded to require William to pay Dan for one half of their value, or $1,500. Hence, he said, "William *to pay* to my son Dan, $1,500." He then concluded by providing for an equal division of the personalty. While the devise to William and the requirement to pay to Dan are contained in separate paragraphs, it seems to us they were clearly coupled in the mind of the testator. We think the learned trial judge was entirely correct in determining it was the intention of the testator that since William was receiving the land with the buildings on it, he should respond to Dan in the amount stated and that this amount was intended as a charge on the land. We think, under a fair interpretation of the testator's intent, this conclusion follows as logically as though the will had expressly made the payment a charge on the land. (*Mastellar v. Atkinson,* 94 Kan. 279, 283, 146 Pac. 367.) In a lengthy note in 62 A. L. R. 596, the annotator, in discussing the question as to whether a charge was created, says:

"The courts have, wherever possible, construed a provision for the payment of a legacy, *or of a sum of money,* as a charge rather than a condition prece-

dent, in order that the estate may vest in the devisee. Thus, where it appears from the language of the will that the testator intended to couple the payment of the legacy by the devisee with the devise of the land, so that the payment is to be made, because, or as a condition on which, the devise has been made, then the real estate is, in equity, chargeable with the payment of the legacy." (Italics inserted.) (See numerous authorities cited.)

See, also, 28 R. C. L., Wills, §§ 293, 294, and annotation in 62 A. L. R. 593, and 606 to 610.

Defendant urges this court has expressly held that legacies are payable out of personal estate only, unless a contrary intention be derivable from the instrument. (*Warlick v. Boone,* 120 Kan. 148, 242 Pac. 135.) We have indicated the will in the instant case evidenced a contrary intention. In arriving at that conclusion we have not overlooked item five, which expressly provided the personal property was to be divided equally between the sons. It would therefore appear it was not the intention of the testator that the $1,500 should be paid out of the personalty. Furthermore, the testator did not know there would be any personalty left after the termination of the life estate. It developed there was only $1,000. It is the duty of courts to give such construction to a will, if reasonably possible to do so, as will make effective the will of the testator rather than one which will defeat its reasonable intendment.

Defendant accepted the devise of the land but refused to comply with his father's direction to pay Dan $1,500. He could not accept the benefits of the will and reject its burdens. (*Crowley v. Nixon,* 127 Kan. 178, 272 Pac. 104.)

Defendant insists since title vested in him on the death of the testator he could have sold the land anytime thereafter subject to the life estate. The purchaser would, of course, have acquired title subject to the life estate. It would, however, not have been free from the charge created by the will to pay Dan $1,500. (*Mastellar v. Atkinson,* supra; 28 R. C. L., Wills, § 294.)

Defendant next contends the court erred in rendering a personal judgment for the item of $1,500. If defendant's contentions were sound the land could not be charged, neither would defendant be personally liable. It would therefore follow defendant could retain the land and defeat the plain direction to compensate Dan. Clearly such a result would do violence to the plain intention of the testator. We think the acceptance of the devise under the will imported a promise to pay the obligation created by the will. In 28 R. C. L. (Wills, § 291) the rule is stated thus:

"When a devisee accepts lands which have been charged with a legacy the general rule is that he becomes personally liable for the payment of the legacy, which obligation may be enforced without resort to the land. The rule rests upon the reasonable principle that he who takes a benefit under a will must take it subject to its provisions. The acceptance of the devise therefore imports a promise to pay the legacies." (p. 307.)

To the same effect is *Donohue v. Donohue*, 54 Kan. 136, 37 Pac. 998. See annotation to *Stringer v. Gamble*, 155 Mich. 295, 118 N. W. 979, in 30 L. R. A., n. s., 815.

Defendant also urges that if the will created a personal obligation the statute of limitations has barred its recovery. He contends his rights under the will vested on the death of the testator, which was in November of 1924. Defendant testified to the effect that about three years after his father's death he advised Dan he would accept the land but did not intend to pay the $1,500. Defendant contends the statute of limitations began to run either on the death of his father or, at the latest, in 1927, when he rejected the obligation. True, defendant's rights vested on the death of the testator, but those rights did not entitle him to the enjoyment of the land at that time. That right was postponed until the termination of the life estate. Until then he was not obliged to accept the devise or assume the obligation. A previous indication he did not intend to pay Dan did not terminate the life estate and thus mature the obligation. Obviously the statute did not begin to run before the debt was due, that is, before the cause of action accrued. The life tenant died in 1935. This action was commenced in 1936. It follows the action was not barred under any statute of limitation. For a general discussion of limitation of actions by remaindermen, see 21 C. J., Estates, § 173; 69 C. J., Wills, § 2636; 28 R. C. L., Wills, § 293.

Defendant further contends the trial court should have made amendments to findings of fact in order to cover all the evidence concerning which there was no dispute. We have already narrated some of the facts requested which were not contained in the findings. Defendant requested that finding number two be amended to read as follows:

"The defendant William J. Selzer, Jr., was born on the real property described in his father's will and devised to him thereby and he has lived thereon for his entire life. That for sometime prior to the death of their father, the two sons occupied the respective pieces of land devised to them agreeable with arrangements made with their father, and after their father's death the two sons continued to occupy the respective pieces of land devised to them under written contracts of rental with their mother and agreeable with the

arrangements she had with them respectively. The mother lived on the tract which she rented to William J. Selzer, Jr., but in a different building from that which he occupied with his family. She paid the taxes on the whole tract up to the time of her death, which occurred in April, 1935. After the death of the father, William J. Selzer, Jr., while continuing to occupy the premises devised to him by the will of his father and to pay his mother rent therefor, made valuable and lasting improvements on said real estate by the erection of buildings, a silo, and the building of a pond and fences thereon. That the making of such improvements was entirely outside of the rental agreement existing between William J. Selzer, Jr., and his mother. That some of said improvements were made immediately following the death of the father and all of said improvements were made prior to the year 1930. That the plaintiff, Dan Selzer, lived on the real estate devised to him by his father's will and adjacent to that occupied by the defendant, William J. Selzer, Jr., and said plaintiff, Dan Selzer, had actual knowledge of the making of such improvements at the time that each thereof was made."

Defendant also requested that finding number three be amended as follows:

"Approximately three years after the death of the father, the two sons had a conversation in which William J. Selzer, Jr., advised his brother, Dan Selzer, that the land devised to him by their father belonged to him and was his land and that, besides, he was renting it from his mother, who had a life estate therein, but that he would not pay his brother, Dan Selzer, the $1,500 which was set out in item four of their father's will. That he would trade farms with his brother, Dan, and call it square if Dan wanted to trade. After some words on the part of each of the two brothers, William J. Selzer, Jr., ordered Dan Selzer off the place devised to him by item two of his father's will.

"Since the father's death in November, 1924, and since the admission of the will of the father, William J. Selzer, to probate in February, 1925, William J. Selzer, Jr., has occupied the tract devised to him, claiming to own the same, free and clear of any alleged claims which Dan Selzer may have against it and subject only to the life estate of his mother, now deceased."

Upon careful analysis of the requested findings we are unable to see how they could alter the conclusion reached.

Defendant also requested that finding number four be stricken on the ground it was unsupported by evidence and was not justified under the terms of the will. In view of what we have previously said it follows the request was properly overruled. Conclusions of law requested concern questions we have previously discussed relative to the charge on the real estate devised and the statute of limitations, and hence require no further treatment.

Other specifications of error are urged, but the questions thereby presented have been previously considered.

Plaintiff has cross-appealed on the ruling of the trial court deny-

ing interest on the $1,500 item from the termination of the life estate on April 25, 1935, to date of judgment, October 10, 1936. The trial court denied interest for that period on the ground the delay in payment was not an unreasonable and vexatious delay. Under somewhat similar circumstances it has been held interest is recoverable from the termination of the life estate. (*Glen v. Fisher*, 6 Johns, Ch. [N. Y.] 33; 10 Am. Dec. 310.) Under the circumstances in this case we believe defendant was entitled to a reasonable time after his mother's death within which to pay the charge. We fail to find in the record any demand by plaintiff for payment after the death of the mother unless this action be considered a demand. We think it may be so considered. It was filed on January 10, 1936. That was about ten months after the termination of the life estate. In the light of the record, it would appear that was clearly a reasonable time for defendant to pay, and in the absence of a showing to the contrary we are obliged to assume plaintiff so regarded it.

Defendant reminds us no motion for a new trial was filed concerning the ruling on the interest item. That subject was presented to and considered by the court prior to the rendition of the judgment. That ruling presented purely a question of law, and a motion for new trial was unnecessary. (*Schubach v. Hammer*, 117 Kan. 615, 232 Pac. 1041; *Rierson v. Southern Kansas Stage Lines Co.*, ante, p. 30, 69 P. 2d 1.)

The judgment as to the interest item is hereby modified to include interest from January 10, 1936. In all other respects the judgment will be affirmed. It is so ordered.