No. 35,153

John Harvey Tomb, Stuart Elmer Tomb, and Blanche Eleanor Tomb Clark, *Appellees* and *Cross-appellants*, v. Emma Bardo, John Frank Bardo, *Appellants*, et al.

(114 P. 2d 320)

Opinion filed June 7, 1941.

*Frank G. Theis,* of Arkansas City, for the appellants.

*O. Renn, George Templar* and *Earle N. Wright,* all of Arkansas City, for the appellees.

The opinion of the court was delivered by

Allen, J.: This action was for a declaratory judgment to con-

strue a will and to determine the rights of the legatees and devisees thereunder.

William C. Bardo, a resident of Cowley county, died testate on the 6th day of December, 1938. Omitting formal parts, the will reads:

"Item One: I give and bequeath to my sister, Maggie Holmes, my business property at 111 South Summit street, Arkansas City, Kansas, to have and to hold forever.

"Item Two: I give and bequeath to my brother Harry's wife, Emma Bardo, and his and her sons John, Frank and William Hensyl, my one-half undivided interest in business property at 108 South Summit, Arkansas City, Kansas, to have and to hold forever.

"Item Three: I give and bequeath to my sister-in-law, Cora W. Bartlett, my thirty shares of General Motors Stock to have and to hold forever, if she is living.

"Item Four: I give and bequeath to my sister-in-law, Virginia B. Wright, my $500 Cities Service Bond to have and to hold forever, if she is living.

"Item Five: I give and bequeath to my wife Grace, my undivided one-half interest in residence property at 442 Riverview avenue, Wichita, Kansas, to have and to hold forever.

"Item Six: After items one, two, three, four and five have been fulfilled and my funeral and other indebtedness have been paid, I give and bequeath to my wife Grace, control of all my property and I give and bequeath to her the income from all my property, both real and personal, as long as she lives: Provided she keeps all the buildings insured against loss by fire, wind and hail, and pays all the taxes assessed against all the property and keeps all property in good repair.

"Item Seven: At the death of my wife Grace, I give and bequeath to my niece Carol Bardo, my undivided one-half interest in real estate at 123 South Summit street, Arkansas City, Kansas, to have and to hold forever, if she is living.

"Item Eight: At the death of my wife Grace, after item seven is fulfilled and my wife Grace's funeral and other indebtedness is paid I give and bequeath to my nieces and nephews and great-nieces and nephews, descendants of my sister Emma, sister Sarah and brother Wilson, also to Elmore Wright, Elizabeth Wright, Floyd Wright, Earle Wright, Nellis Mason, Mabel Mason Quail and Catherine Malissa Bardo, all that are then living, share and share alike in the net proceeds of all the remaining property.

"Item Nine: I hereby nominate and appoint my wife Grace, executrix of this will as long as she lives to act as such without bond. At her death I appoint Maude E. Bardo as executrix of this will to act as such until all the terms of this will are complied with, to act without bond, and she may take out of my estate for her services, $500. I hereby authorize, direct and empower them both to make, execute and deliver any and all releases, acquittances, assignments, grants and other conveyances necessary and required to fully carry out all the terms and conditions of this will and to do so without orders or directions of the probate court or any other court."

The will was duly admitted to probate, and Grace Bardo was appointed executrix. On January 12, 1939, the widow, Grace Bardo, renounced the provisions made for her in the will and elected to take under the law.

The plaintiffs in the action are certain beneficiaries claiming under item eight of the will.

Maggie Holmes, devisee under item one of the will, filed an answer and cross petition. Similar pleadings were filed by the legatees and devisees under items two, three and four. Separate answers were filed by Grace Bardo, executrix, and by the specifically named beneficiaries under item eight.

The court made findings of fact and returned conclusions of law. From the judgment rendered upon the findings, various appeals and cross-appeals are before us.

Where a widow renounces the benefits attempted to be conferred upon her under the will of her husband and elects to take under the statute (G. S. 1935, 22-245), she receives the share of his estate that she would have taken had he died intestate, which is one-half in value after the payment of his debts. (*Ashelford v. Chapman,* 81 Kan. 312, 105 Pac. 534.) The statute gives the surviving spouse a right to a nonbarrable intestate share—the election to take against the will makes the guaranty effective.

As the election of the widow has caused a partial frustration of the original scheme of the testator, what disposition is to be made of the other undivided one-half interest in the property? In *Allen v. Hannum,* 15 Kan. 625, where the widow elected to take under the law, it was stated: "The other half of the estate, we think, should be distributed in accordance with the will, or as near in accordance therewith as may be possible under the circumstances of the case." (p. 626.)

The rule thus announced has been followed in our subsequent cases: (*Noecker v. Noecker,* 66 Kan. 347, 71 Pac. 815; *Allen v. Patee,* 104 Kan. 440, 179 Pac. 333; *Pittman v. Pittman,* 81 Kan. 643, 107 Pac. 235; *Ward v. Ward,* 153 Kan. 222, 109 P. 2d 68.)

The law gave the widow the right of election. She could take under the will or an intestate share under the law. The testator was presumed to know that his widow had the right to renounce the will. But the renunciation makes only such changes in the will as the law compels.

The devisees and legatees under items one, two, three and four

assert that they are entitled to compensation from the residuary property for the loss and disappointment sustained by them as a result of the election of the widow to take against the will.

The cardinal rule in the construction of wills to which all other rules are subordinate, is that the intention of the testator must be ascertained, if possible, and must be given effect if it is not contrary to an established rule of positive law or in violation of public policy. The intention which controls in the construction of a will is that which is indicated, either expressly or by necessary implication, in the language of the will. The testator's intention must be ascertained from the whole will, or as it is frequently said, from the four corners of it. If the words and phrases of the will are clear in themselves, the court may not depart from the obvious meaning of such words and phrases in construing the intention of the testator as expressed in the will, the supreme test being to determine the actual intention of the testator. (*Thornberry u. Fletcher,* 91 Kan. 744, 139 Pac. 391; *Selzer v. Selzer,* 146 Kan. 273, 69 P. 2d 708; *Johnson v. Muller,* 149 Kan. 128, 86 P. 2d 569; *Zabel v. Stewart,* 153 Kan. 272, 109 P. 2d 177.) In *Selzer v. Selzer,* supra, the court stated:

"A rule for the interpretation of wills, to which all other rules must yield, is that the intention of the testator must control. In order to ascertain that intention it is the duty of the courts to consider the will as a whole and to give to its various provisions such construction, if reasonably possible to do so, as will effectuate rather than defeat the intention of the testator." (Syl. ¶ 1.)

In items one and two specific devises of real estate were made to the persons named. In item three there was a gift of "my thirty shares of General Motors Stock." This was a specific legacy. (*Myers v. Noble,* 141 Kan. 432, 41 P. 2d 1021; 3 Pomeroy's Equity Jurisprudence, § 1130; 69 C. J. 919.) Likewise, the gift in item four was a specific legacy. The legatees under three and four survived the testator and the condition that the legatees should be alive at the death of the testator was fulfilled. The property devised and bequeathed in items one to four was a part of the estate of the testator at his death.

Under item five certain real estate is devised to the widow.

Then follows item six with the significant words: *"After items one, two, three, four and five have been fulfilled and my funeral and other indebtedness have been paid,"* the income of his property, real and personal, was given to his widow.

Under item seven a remainder interest in certain real estate is given "to my niece Carol Bardo."

"At the death of my wife Grace, after item seven is fulfilled," and after "other indebtedness is paid," then the beneficiaries under item eight are to take "share and share alike *in the net proceeds of all the remaining property.*"

The intention of the testator is clear. The order and sequence of the gifts to the objects of his bounty is set forth in plain language. First the devises and legacies in items one to five are given priority—after the fulfillment of these gifts the widow was to have a life estate in the balance of his property, real and personal—then the gift to the niece in item seven, then the net proceeds of all the remaining property to pass to class mentioned in item eight.

The court found the total value of the real and personal property of the testator at the time of his death was about $62,250. The court found that the real and personal property mentioned in items one, two, three and four was of the value of $11,743.18. The assets of the estate, after the widow's election, were ample to compensate the preferred beneficiaries under the first four items of the will.

In *Allen v. Hannum*, supra, the testator gave all his estate to his wife for life, and after payment of debts and legacies the remainder was devised to the minor children of his daughter. A legacy was given to a son of the testator. The widow elected to take against the will. The court held the remainder to the minor children "was subject to the payment of the legacy" to the son.

In *Pittman v. Pittman*, supra, the testator devised eighty acres of land to his son. The widow was not named in the will. After payment of the debts and expenses one-half of the remainder of the property was devised to the children of his second wife. The election of the widow to take the share allowed her under the law deprived the son of one-half of the land devised to him. He asked compensation from the portion devised to the other children. In sustaining this claim, the court stated:

"The general rule is that where a widow renounces provisions of a will and elects to take under the law, and where devisees or legatees are disappointed in realizing the provisions made for them by the will, the benefits renounced by the widow are equitably applied, as far as possible, in compensating the losses so sustained by her election. In this case, however, the widow renounced nothing. The election of the widow to take under the law does not render the will inoperative further than as between herself and others claiming portions of the estate. As between other persons, the will will be enforced as near in

accordance with the intention of the testator as it can be so enforced. (*Allen v. Hannum*, 15 Kan. 625.) The reading of the will conclusively shows that the testator intended his son Frank to have the eighty acres of land free from any indebtedness. Although it was encumbered with a mortgage of $500, with the other land, he directed that such mortgage be paid out of his other property. Again, his bequest to his other children was qualified by these words: 'And after deducting the said bequest to my son Frank Pittman.' On the other hand, no unqualified bequest is made to the other children, but a bequest is made subject to the payment of the debts as well as to the bequest to Frank. The other children were residuary legatees in the sense that after paying the debts and funeral expenses they were to have one-half of the remaining personal property as well as one-half interest in the homestead. It is also a general principle that where, under circumstances like these, a bequest is lost by reason of the election of a widow to take under the law, the loss is made good, so far as possible, out of any residuary property. It does not, however, appear in this case whether there was any residuary personal property after paying the indebtedness and funeral expenses; but it is not contended that the court erred in not so compensating the loss." (p. 647.)

In our recent case of *Kelsey v. Warfield*, 147 Kan. 445, 76 P. 2d 777, it was held, as stated in the syllabus:

"Where a testator devised certain land, and also gave a legacy of $5,000 out of his personal property, to his niece, and then provided that after all bequests and devises had been paid and fully met, and all debts and charges paid, the remainder of his estate was devised to his sister and brothers, and further provided that no part of any bequest to them, or either of them, should be paid until the bequests and devises to other persons had been fully paid: *held,* that if the personal property was insufficient to pay the debts and the legacy of $5,000 the residual real estate must stand charged with the payment of the same."

In the Warfield case, the testator had specified the order and sequence of the gifts to the various devisees and legatees, and the intention as expressed in the will was enforced. The court stated:

"In the case at bar, if the testator had stopped with paragraph 4 of the will the argument of defendants would have been persuasive. But in paragraph 5 he declares 'after the bequests and devises hereinbefore made by me have been paid and fully met, and all debts and charges paid, the remainder of my estate' is to go to his brothers and sister. But not content with this clear statement, and to exclude any lingering possibility of a doubt as to his intention, the testator makes the further emphatic statement that no part of any bequest to his brothers and sister 'shall be paid until the bequests and devises made to other persons in this will have been fully paid and carried into effect.' This language, we think, leaves the defendants without any substantial ground upon which to rest the opposite contention." (p. 448.)

In *Mercantile Trust Co. v. Schloss*, 165 Md. 18, 166 Atl. 599, the testator devised to one Mary Jane White certain real estate ("Sara-

toga" property) worth $7,000, and bequeathed to her $6,000 in money. The rest of the property testator gave in trust to pay income to his wife for life and and upon her death to convert the principal into cash and pay over to certain designated persons, corporations and institutions, amounts aggregating $265,000, and the balance of the trust estate, after paying all legacies, to Sinai Hospital. Inventory showed the whole estate amounted to $135,238. The widow renounced and elected her legal share, which entitled her to one-half of the testator's net estate, including one-half of the "Saratoga" property. Held: (1) renunciation of the widow so far as the remaindermen's interests are concerned is equivalent to her death and had the effect of accelerating the remainders and making them payable presently instead of at the time assigned in the will; (2) the renunciation of the widow having had the effect of taking one-half of the "Saratoga" property from Mary she should be reimbursed from the corpus of the trust fund before the remaindermen entitled to the corpus receive any part thereof; according to the court it was apparent from the will that Mary Jane was the first object of the testator's bounty even to the exclusion of the widow.

Our attention is called to the case of *In re Povey's Estate*, 271 Mich. 627, 261 N. W. 98, 99 A. L. R. 1183. But in the will in that case the testator did not direct the sequence and priority of the gifts. The editor of the annotation in that case (99 A. L. R., p. 1188) stated:

"It is, of course, competent for the testator to direct specifically what portion of the estate disposed of by him in his will shall bear any loss that may be occasioned by the widow's rejection of the testamentary provision made for her, and where such direction has been made the courts will give effect to it."

In the will before us the testator stated that the specific devises and bequests in the first four items were to be fulfilled before the life estate to the widow in item six or the residuary gift in item eight should become effective. No valid reason has been suggested why the court should not give effect to the intention of the testator so clearly stated.

Was the remainder in item eight accelerated?

By the renunciation of the widow, her attempted life estate failed in its inception. (*Kimberlin v. Hicks*, 150 Kan. 449, 453, 94 P. 2d 335; *Ward v. Ward*, 153 Kan. 222, 109 P. 2d 68.)

Ordinarily a vested remainder will be accelerated upon the termi-

nation of the prior interest. But in *Miller v. Miller*, 91 Kan. 1, 136 Pac. 953, it was held that where the remainder was subject to an unfulfilled condition precedent, the remainder would not be advanced into a possessory interest.

Item eight recites that the gift is to "all that are then living" of the class therein named. We think the purpose was to benefit persons living at the termination of the preceding interest and not those who should be living at the death of the widow. (Restatement of Property, § 233, *Comment c.*) The provision did not create a condition precedent that would preclude acceleration of the remainder.

In this connection another matter deserves attention. The residuary gift under item eight was "to my nieces and nephews and great-nieces and nephews," and to seven named persons. At the death of the testator he left thirty-five nieces and nephews and great-nieces and nephews. Three nieces were living. As other children may be born to the three living nieces, who would be classed as great-nieces or nephews, are such after-born persons to be admitted to the class? In other words, does the class include only the thirty-five nieces and nephews and great-nieces and nephews plus the seven named individuals—forty-two in all—or would the class increase in membership to include other children born to the living nieces and nephews who might be born before the death of the life tenant? We find no expression in the will that would indicate a purpose to include such after-born children. The class was subject to increase only during the existence of the life interest of the widow. By the election of the widow, her life estate never came into existence, hence any children of the nieces who might be born after the death of the testator are excluded. (*Allen v. Hannum*, supra. Restatement of Property, § 231, *Comment i.*) The remainder was accelerated and the class entitled to participate is composed of the forty-two persons above stated.

The election of the widow depleted the gifts to the beneficiaries under the first four items. Another consequence was that the devise to the widow in item five and her life estate became ineffective. One question debated is whether the court should sequester the interests renounced by the widow (which would include the life estate in property described in item seven) and administer the same as a trust fund to compensate the disappointed legatees under the first four items of the will. This solution of the question not only would prevent acceleration of the remainder, but would throw the renounced

interests into a trust fund to continue during the life of the widow. This is done where the renunciation of the widow causes a substantial distortion in the testamentary plan. (*Sellick v. Sellick*, 207 Mich. 194, 173 N. W. 609, 5 A. L. R. 1621.) See annotation, 99 A. L. R. 230.

On the other hand, the remaindermen under item eight not only insist that the widow's election causes an acceleration of their interests—an economic advantage not contemplated by the testator—but that the defunct gift to the widow in item five falls into the residue, and that this windfall inures to their betterment.

If we are mindful of the intention of the testator—of the order and sequence of the gifts formulated with care, of the rank and dignity usually accorded to specific devises and bequests, and of the essential nature of a residuary gift—the whole of these contentions cannot be adopted.

We think the remainder interest in item eight should be accelerated; that the depleted gifts under the first four items should be made whole by (1) applying the proceeds of the ineffective gift to the widow under item five, and (2) applying so much of the proceeds of the gift under item eight (and item seven below noted) as may be necessary to accomplish that end. It also follows that the gifts under items five and eight should be subject to a lien or charge to secure restoration of the depleted devises and legacies under the first four items.

Under item seven the testator gave a remainder interest in certain real estate to his niece, Carol Bardo. Under the terms of the gift, her right of enjoyment was postponed until the death of the life tenant. Her remainder is now advanced. A charge should be placed on the real estate devised to her for the proportionate part necessary to make whole the specific gifts under the first four items.

The remaining questions presented on the appeal must now be examined.

How is distribution to be made among the remaindermen under item eight? We have considered with attention the various theories presented, but believe the answer is found in the direction given by the testator: "I give and bequeath to my nieces and nephews and great-nieces and nephews, descendants of" two sisters and a brother—and to seven named persons. At the death of the testator there were thirty-five nieces and nephews and great-nieces and nephews, descendants of the two sisters and the brother who were then living. · All nieces and nephews and all great-nieces and nephews

were included. The limitation was that such persons must be descendants of "sister Emma, sister Sarah and brother Wilson." This would exclude descendants of any other sisters or brothers who might otherwise answer the description of nieces and nephews or great-nieces and nephews of the testator. As there were thirty-five nieces and nephews and great-nieces and nephews, and seven named persons—a total of forty-two—we think the remainder should be divided into forty-two shares, and one share should be allotted to each of the forty-two members.

Was power conferred on the executrix to sell the real estate devised under item eight of the will? Item eight provides that the "net proceeds" of all the remaining property be divided among the beneficiaries thereunder, share and share alike, and in item nine the executrix is authorized and directed to execute the necessary conveyances to carry out all the terms and conditions of the will. The power is given by the express terms of the will.

It is next asserted that as the widow, Grace Bardo, renounced the will, she cannot be heard to claim any right or power under it. Having elected to take under the law she could not claim as devisee or legatee under the will. But we do not think her election to take against the will precludes her from acting as executrix. The estate must be administered. The widow was nominated by the testator and appointed by the court. If she should fail to perform her duties as executrix or to faithfully execute the trust imposed, she may be removed.

Certain claimants under item eight moved to dismiss the cross petition of the appellants who claim under the first four items of the will on the ground the probate court alone had jurisdiction to determine the rights of the cross petitioners. The cross petitioners were legatees and devisees under the will, and the contention they were not entitled to a hearing to establish their rights is without merit. (These same claimants are here asserting their rights under the will and contending the court erred in allowing them only an undivided one forty-second interest in the residuary assets.)

The trial court, in its conclusions of law, found:

"8. The court concludes as a matter of law that the testator is presumed to have known the law when he executed his will, and that his widow might lawfully exercise her legal right to take against the will and according to law.

"In view of this presumption and in view of the fact that the executrix has settled 'in full' with Cora W. Bartlett and Virginia B. Wright and has ac-

counted with the legatees in items 1, 2 and 7 and, they have accepted said accounting, and in view of the intention of the testator as gathered from the will, taken as a whole, this court concludes as a matter of law that:

"The defendants, Maggie Holmes, Emma Bardo, John Frank Bardo, William Hensyl Bardo, Cora W. Bartlett, Virginia B. Wright and Carol Bardo Baldwin, are not entitled to be compensated or reimbursed out of the testator's property disposed of in item 8 of said will for their loss and disappointment occasioned by the election of the widow, Grace Bardo, and that they are not entitled to any lien or charge for the payment of the same on any other property of the decedent."

It seems the widow, after her election to take against the will and her appointment as executrix, collected the rents on the real estate devised under items one and two of the will, and after the payment of current charges she appropriated one-half of the net proceeds to herself as owner and the balance to the devisees; that the subject matter of specific bequests under items three and four were sold and a like division was made between the executrix and the legatees.

As there was no evidence that the partial distribution made to devisees and legatees was understood to be or was accepted by them as a full and final release of their rights and claims under the estate, we do not think they were estopped to assert their rights under the will.

The court allowed a fee to the attorney representing the appellants, and it is contended the appeal should be dismissed for that reason. We do not think the case of *Fadley v. Fadley*, 128 Kan. 287, 276 Pac. 826, relied upon, is applicable. The point is not well taken.

Complaint is made of the action of the court in taxing the costs to the residuary assets of the estate. Under the statute, G. S. 1935, 60-3706, this was a matter within the discretion of the trial court.

We do not think it necessary to extend this opinion with comment on other questions raised.

The judgment will be reversed and the cause remanded with direction to enter judgment in accordance with the views herein expressed. It is so ordered.