No. 35,901

In the Matter of the Estate of Lewis J. Ellertson, Deceased (MASE-LIUS MYDLAND, Administrator with the Will Annexed of the Estate of Lewis J. Ellertson, Deceased, *Appellee*, v. CONRAD ROSS, Executor of the Last Will and Testament of Hannah Smith, Deceased, *Appellant*).

(142 P. 2d 724)

Opinion filed November 6, 1943.

*Harry K. Allen,* of Topeka, argued the cause, and *Roy V. Nelson,* of Hiawatha, *E. F. Beckner* and *Leon N. Roulier,* both of Colby, were on the briefs for the appellant.

*J. H. Jenson,* of Oakley, was on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This appeal involves the construction of the will of Lewis J. Ellertson and the rights thereunder of Johanne Smith, whose name is sometimes shown as Hannah Smith. The controversy arose when the executor of the estate of Hannah Smith filed objections to a petition for final settlement of the estate of Lewis J. Ellertson filed in the probate court. From an adverse judgment the executor appealed to the district court where the matter was submitted on an agreed statement of facts from which the following statement is summarized.

Lewis J. Ellertson died and left a last will and testament, which was duly admitted to probate in the probate court of Logan county, on November 18, 1926. By items 1, 2, 3 and 6 of his will the testator provided for the payment of his debts and funeral expenses, made cash bequests to certain named nephews and appointed V. Jaggar as executor. Items 4 and 5 read as follows:

"4. After all of the foregoing charges and bequests have been paid, I direct that the balance of my estate be divided into five equal parts. Of such parts, I give, devise and bequeath one each to my brothers, Martin Mydland, Tobias Larson, Carl Mydland and Maselius Mydland, and one of said parts I give, devise and bequeath to V. Jaggar of Oakley, Kansas, in trust for my sister Johanne Smith, and her husband, Thomas Smith, on the terms and conditions hereinafter stated.

"It is my will that said trustee shall out of the property left in his care and trust, and out of the income and profits therefrom, pay to my sister, Johanne Smith, and after her death, to her husband, Thomas Smith, if he survive her, the sum of fifty dollars ($50.00) per month during the natural lives of either or both of said parties; and in the event of sickness of either of said parties or upon the showing by either of them of need for a greater

amount, to pay such additional sum as will properly care for and provide for their needs. At the death of the last survivor of the said Johanne Smith and Thomas Smith, all of the balance of said trust fund then remaining shall revert to and become a part of my estate and shall be divided equally, share and share alike, between my said brothers, Martin Mydland, Tobias Larson, Carl Mydland and Maselius Mydland.

"5. Inasmuch as a portion of my estate consists of real property, it is my will that all moneys, securities and personal property be divided, apportioned and paid out as soon after my death as possible, and that my real estate shall be held and managed by my brother, Maselius Mydland, for the benefit of my estate and until such time as in his uncontrolled discretion it can be sold to the best advantage; and upon the sale thereof, the proceeds therefrom shall then be divided and distributed as in the case of my personal property."

The record discloses that the testator and his beneficiaries named in the quoted paragraph were brothers and sister, were all born in Norway, and upon coming to this country adopted different surnames.

At the time of his death Ellertson was possessed of personal property consisting largely of notes, the amount not being shown, and two half sections of land in Logan county.

Jaggar qualified as executor and filed reports for the years 1927 to 1931, inclusive, which showed that he made the following payments to Hannah Smith: 1927, $600; 1928, $600; 1929, $300; 1930, $600; and 1931, $400. The last report shows that at that time the cash and collectible assets were exhausted. There is no specific showing that Jaggar, as trustee, ever filed any reports or made any accounting. Although not specifically shown, apparently the other residuary legatees received their respective shares of the property thus administered. Jaggar died in 1936 and at that time he had no personal property of the estate in his hands. However, among the assets which he had received was a note for $5,000 secured by a mortgage on real estate and subject to a prior lien. Without going into details, Jaggar had handled this note in such manner that certain real estate in Thomas county was acquired. This particular real estate was sold and on June 8, 1942, Maselius Mydland sent Hannah Smith the sum of $360, which included her share of the real estate in the amount of $199.05 and her share of rents from the Logan county land in the amount of $160.95. After the death of Jaggar nothing was done in the probate court in the Ellertson estate until in February, 1942, when a petition was filed for the appointment of an administrator with the will annexed and on March 2, 1942, Maselius Mydland was so appointed and qualified. On a date not shown Maselius Mydland

filed a petition for allowance of his final account. At that time he had no personal property of the estate in his possession and the Logan county real estate was all the property remaining belonging to the estate. After the death of Ellertson, Maselius Mydland took charge of the Logan county land. It was unproductive until the crop of 1941. The net proceeds of this crop were divided and Hannah Smith received $160.95 as noted above. The land was disposed of in the manner hereafter stated.

Thomas Smith, named in the will, died March 21, 1935, and Hannah Smith died August 7, 1942, and a temporary administrator was appointed for her estate in Brown county, Kansas. He filed an answer and cross petition in the probate court of Logan county to the petition for final settlement, in which he set up various matters concerning the Ellertson estate, and alleged that under the Ellertson will Hannah Smith had been paid the sum of $2,510; that there was due her at the rate of $50 per month from the date of the death of Ellertson to the date of her death a balance of $6,915; and that amount should be found due her and declared a lien on a one-fifth interest in the real estate. On September 16, 1942, the probate court rendered judgment, the details of which need not be noted, but the effect of which was to deny to Hannah Smith or the executor of her estate any further interest in the property of the estate. At some date not disclosed Conrad Ross, the temporary administrator of the estate of Hannah Smith, was appointed as executor of her last will, and as such he appealed to the district court, but before the matter was heard there, by agreement of all parties Maselius Mydland sold the Logan county real estate and now holds one-fifth part of the net proceeds of the sale for distribution on final disposition of the cause.

In deciding the cause the district court prepared a written opinion, which is included in the journal entry of judgment and hereafter referred to, and in accordance therewith rendered judgment that Conrad Ross, executor of the will and testament of Hannah Smith, take nothing from the proceeds of the real estate involved. His motion for a new trial being denied, he appealed to this court, specifying as error the refusal of the district court to impress a lien upon the proceeds of the Logan county real estate, the rendering of judgment against him, and the denial of his motion for a new trial.

Whether the judgment of the district court was correct or not depends primarily on the construction placed on items 4 and 5 of the will of Lewis J. Ellertson. As expressed in the written opinion the learned trial court said:

"The Court is of the opinion that the deceased Lewis J. Ellertson intended to and did by the provisions of his will give to the said Johanne Smith the income from one-fifth (⅕) of his estate, after paying certain legacies. He says in the second paragraph of the fourth division of the will:

"'It is my will that said trustee shall out of the property left in his care and trust, and out of the income and profits therefrom, pay to my sister, Johanne Smith, . . .'"

Summarizing, the opinion continues that the only property left in the care and trust of the trustee was personal property; that the real estate was to be held and managed by another brother, Maselius, as provided in item 6, and while any income that might be derived in the way of rents and profits from the real estate would go to the trustee, the fee title to this property was never vested in the trustee to the extent it could be considered as propery left in his care and trust and it was clear the title to the real estate never vested in Johanne Smith. The court further stated that with respect to the real property of Ellertson, the position of Johanne Smith was quite analogous to what her situation would have been if she had been left a life estate in one-fifth of said property with a power of disposal; that there was nothing in the record to show that Johanne Smith, in her lifetime, took any steps to require any payments due to her under the will be made, that she simply took and received such payments as were made by the trustee and when the personal property was exhausted and there was no income she received no payments. The trial court stated further that since it was of the opinion there was no vested interest in Johanne Smith, she had no right to dispose by will of any interest she had in the property during her lifetime, and that the court "having reached the conclusion that it was the intention of the deceased Lewis J. Ellertson to give to his sister only the sum of fifty dollars ($50) a month out of the income and profits from the property left in the care and trust of the trustees, or such additional sums as might be needed" by her, there remained nothing further in the case except to find that the executor of her estate take nothing from the proceeds of the sale of real estate here involved.

In approaching any problem of construction of a will certain definite rules are to be borne in mind.

There is no occasion for employing any rules of judicial construction where the intention is expressed clearly and unequivocally in the will (*National Life Ins. Co. v. Watson*, 141 Kan. 903, 905, 44 **P**. 2d 269). The will is to be construed so as to give effect to every

part thereof, providing an effect can be given to it which appears to be consistent with the purposes of the testator as gathered from the entire will, and to effectuate rather than defeat the intention of the testator. (*Ernst v. Foster*, 58 Kan. 438, 49 Pac. 527; *Selzer v. Selzer*, 146 Kan. 273, 69 P. 2d 708.) Controlling significance is not to be given to one of the terms of devise or bequest and other terms ignored. (*Johnson v. Muller*, 149 Kan. 128, 86 P. 2d 569.) The court must put itself as nearly as possible in the situation of the testator at the time he made the will and from a consideration thereof and the language used in every part of the will, determine the purposes and intentions of the testator (*Dyal v. Brunt*, 155 Kan. 141, 123 P. 2d 307). All of the above rules are only phases of the fundamental rule that the intention of the testator is to be gathered from the will as a whole and that intention must prevail if it is consistent with the rules of law (*Zabel v. Stewart*, 153 Kan. 272, 109 P. 2d 177). The above cases are illustrative. Many others of like effect might be cited. It is also to be borne in mind that a will speaks from the time of the testator's death, unless it plainly shows a contrary intention, and is to be construed as operating according to conditions then existing. (69 C. J. 126; 28 R. C. L. 234; see, also, G. S. 1941 Supp. 59-613 as bearing thereon.)

It will be observed the district court was of the opinion that Ellertson intended to and gave Johanne Smith income from one-fifth of his estate and then only as to that portion which was left in the care and custody of Jaggar the trustee; that income from the real estate would go to Jaggar, but he had no title to the real estate to the extent it could be considered property left in his care and trust and it was the intention of Ellertson to give Johanne Smith $50 per month out of the income. With that conclusion we cannot agree. We observe that the theory of the decision of the trial court varies from that adopted by the trustee Jaggar, for he did not limit the payments made by him to Johanne Smith to income or profits. He distributed the corpus of the estate until he had disbursed all that had been reduced to cash, and at his death there remained only some unliquidated personal assets and the real estate which had not been sold. We also observe that under the theory of construction adopted by the trial court, had the land been sold immediately after the death of Ellertson, Johanne Smith would not have been entitled to any part of the proceeds of the sale, for such proceeds would not have been income or profits of the real estate, nor would

they have been a part of the personal property left in the care of Jaggar.

Deferring for the time being any question of the interest of the beneficiary, Johanne Smith, in the trust created for her, we survey the will. The provisions for payments of debts and funeral expenses and for money bequests to certain nephews are too clear for dispute and there is none. By paragraph 1 of item 4, the testator provides that after payment of those charges and bequests, "the balance of my estate" shall be divided into five equal parts, one each to four-named brothers and one to Jaggar in trust for the sister Johanne. It will be noticed that up to this point the testator had made no distinction between his real and personal estate or the extent of the interest of the trustee therein. Passing for the moment the second paragraph of item 4, which deals with the trust, we note item 5. In it the testator directs that his personal property shall be divided, apportioned and paid out as soon as possible after his death, but as to his real estate he provides that it shall be held, managed and sold by his brother Maselius and the proceeds divided and distributed as in the case of his personal property. Possibly there may be room for an argument that this item created a trust in Maselius but whether it did or not it is clear that upon a sale being made the proceeds were to be divided as theretofore provided, which was that one-fifth was to go to each of the four brothers and one-fifth to Jaggar as trustee. We are of opinion that under item 5 the testator intended to convert his real estate into cash and have that cash divided, and did not intend to give undivided interests in real estate. As a practical matter that is the interpretation which all the parties in interest have placed on item 5. If that interpretation be correct, and we think it is, then under the will there was an equitable conversion and what passed to the legatees under paragraph 1 of item 4 included the proceeds of the real estate when sold and was personal property. If a contrary view were to be taken, and taking the will as a whole it cannot be, then the interest of the trustee in the real estate or the proceeds thereof was not a part of the property out of which the beneficiary was to be paid, and she was as effectually cut off from the real estate or the proceeds as though the testator had given it directly to his brothers. We think it must be said the intention of the testator was to give to his trustee one-fifth of all of his property remaining after payment of his debts and legacies, of whatever nature and without

exception, save as to the time and manner in which the real estate was to be sold and converted into money.

The above observations are a premise for determining the intention of the testator with respect to the benefits which he conferred on his sister Johanne. We first examine the will to determine the nature and character of the gift to her and then its extent. There is no doubt but that a testator may make a will in which he creates a trust only the income of which is to be paid to his beneficiary, or creates a trust under which stipulated amounts are to be paid periodically to the beneficiary out of income and corpus of the trust estate. In the latter case the legacy is said to be of an annuity, which is defined as a fixed sum payable periodically, chargeable upon the property of the donor, the distinction between "income" and "annuity" being that income means profits to be earned, the amount of which is not fixed or certain but contingent on the amount of earnings, while an annuity is a fixed amount directed to be paid absolutely and without contingency. (See 3 C. J. S. 1373, 1374; 2 Am. Jur. 819; and 3 Page on Wills, Lifetime ed., §§ 1172, 1173.)

In many cases which have reached the courts there has been controversy whether the will gave only a gift of income payable solely out of earnings, or was so worded as to permit encroachment on the principal, or was a gift of an annuity. The final disposition of these cases shows rather generally that whether the gift was of income either limited or chargeable on corpus, or of an annuity, depended on the language used by the testator. Many of these cases are accumulated in the annotation in 136 A. L. R. 69, to which reference is made.

Because of the prior death of Thomas, husband of Johanne Smith, we may ignore reference to him, and for the reason Johanne is now dead and no extra or additional payments were made to her no reference need be made thereto. For our purposes the second paragraph of item 4 may be read as follows:

"Said trustee shall out of the property left in his care and trust, and out of the income and profits therefrom, pay to my sister Johanne Smith, . . . the sum of Fifty Dollars ($50.00) per month during [her natural lifetime]. At the death . . . of the said Johanne Smith . . . all of the balance of said trust fund then remaining shall revert to and become a part of my estate and shall be divided equally . . . between my said brothers. . . ."

It will be noted that the testator did not say that out of the income and profits of the property left in his care and trust the trustee should pay the monthly payments. On the contrary, the testator

said that out of the property left in his care and trust and out of the income and profits therefrom the trustee should make the payments. Not only by the arrangement of his language and by the use of the conjunction "and" did the testator indicate an intention the corpus of the trust was to be paid out of his entire estate left in trust for her at the rate of $50 per month, but by later language he provided that if at the time of her death the trust fund was not exhausted the balance then remaining was to be paid equally to the four brothers. To state the legal conclusion he gave her an annuity.

If we were in doubt as to the above, further consideration would show that the will made no disposition of the corpus of the trust fund after the death of Johanne. On the contrary it provided that on the death of the survivor of Johanne or her husband "all of the *balance* of said trust fund *then remaining*" should go to his brothers. Under many decisions this is a clear indication the testator intended the annuity should be paid out of the corpus of the fund if the income was not sufficient. See the cases collected in 109 A. L. R. 717 *et seq.*

Appellant directs our attention to *First Trust Co. v. Varney,* 142 Kan. 93, 45 P. 2d 582, as being decisive of the case at bar. That appeal involved the right of a legatee given a stipulated monthly payment during his lifetime to have the same paid out of the trust fund when the income was not sufficient for that purpose. It did not involve any question pertaining to the right of the executor of a deceased beneficiary to recover matured but unpaid installments. In that case the will provided for the reduction of the estate to cash, for the investment thereof and for the disposal of the net income therefrom. We need not repeat fully the facts of that case nor the application of the law thereto but in substance, we construed the will and held that it was the intention of the trustee to give to Varney a stipulated amount per month and that the same should be paid from the corpus of the trust fund when the income was insufficient for that purpose. That case is persuasive of the correctness of the contention of the appellant here, but it is to be noted that in the present case the will does not limit the payment to income.

It was the privilege and right of the testator to provide the extent of his bounty to his sister and the manner in which it was to be paid to her, and that he did, and we are only concerned in determining from what he said what he intended for her, and not whether she did or did not need the money, nor what she might do with her

property after her death. When Ellertson made the will he did not know how long his sister might live, nor what her future situation would be. He evidently wanted to assure her of some income.

As we read the will there is an utter absence of any language indicating that if monthly payments accrued and were not paid, because some of the property was not converted into money, or the then collected income was not sufficient, that there was then no further obligation to her. So long as the trust fund was not entirely expended and thus exhausted, as each payment accrued it was due her—she had a vested interest in it. (See 69 C. J. 615.) Her death prior to the payment of accrued monthly payments to her did not cut off her right to them. It is quite clear to us that the testator intended not only that she should have the stipulated $50 per month in any event, but by reason of the provision as to the sickness or need not included in our last summary but to be found in the entire provision as quoted above, that the trustee might pay her additional moneys. As we view the matter the trial court put undue weight on the phrase "and out of the income and profits therefrom" in concluding that Ellertson intended to give his sister "the income from one-fifth of his estate." We think a correct construction of the will was that Ellertson gave a one-fifth interest in the residue of his entire estate to his trustee Jaggar, for the benefit of his sister Johanne, payable in the manner stated, and if the corpus of the trust estate was not exhausted at the time of her death the balance remaining was to be paid to his four brothers.

We think that in view of the language which the testator used in his will as a whole and in view of the significant fact that he did not use any language indicating a contrary intent, it must be held the testator intended the trustee pay the entire trust fund whether principal or income to Johanne at the rate of $50 per month, or more if he concluded she needed it, and the right to the monthly payments became absolute as they severally matured.

In a sense it is repetition to say that we think that the testator intended his real estate should be reduced to cash and divided as such. He did provide it should not be sold until his brother Maselius in his uncontrolled discretion so decided, but we cannot and do not construe that to mean that Maselius was to hold it indefinitely with the effect that until it was sold and reduced to cash that his sister Johanne had no interest in the potential proceeds and the monthly installments after the other trust estate was exhausted were abated.

We cannot construe the will in any manner that would make it profitable to Maselius to delay sale so that to reduce the amount Johanne would receive with a consistent enlargement of his share. Although there might be instances where a beneficiary or one entitled to an annuity might waive his or her right thereto or might under circumstances be barred by the statutes of limitation, none such exist here. Johanne received payments from Maselius, who seems to have succeeded Jaggar as her trustee, although that is not definitely shown, on June 8, 1942, and she died August 7 of the same year. Her temporary administrator and later executor promptly asserted her rights when it was sought to settle the Ellertson estate and deprive her of the installments of annuity which accrued during her lifetime but were not paid to her.

The record discloses that the share of the proceeds of the real estate sold, and it was the last remaining asset of the Ellertson estate, was less than the accrued unpaid installments due her. Had she survived there is no doubt she personally would have participated when the Ellertson estate was settled and there is no contention to the contrary. We are of the opinion her right to the matured but unpaid installments was a property right which passed to her executor and that he could properly assert the claim.

The judgment of the district court is reversed and the cause remanded with instructions to impress a lien on the one-fifth share of the proceeds of the real estate involved to the extent of the annuity payments which accrued to Johanne Smith during her lifetime but which were not paid to her.

HARVEY, J. (dissenting): I think it inaccurate to interpret the will of Louis J. Ellertson so as to reach a result which the testator by his will specifically provided against.

Passing the provisions of the will pertaining to situations which did not arise (the need of Johanne Smith or her husband of more than $50 per month and the possibility that her husband might survive her), the will with respect to this point reads: "At the death of . . . Johanne Smith . . . all of the balance of said trust fund then remaining . . . shall be divided equally . . . between my said brothers," naming four of them. This provision makes it clear that no part of the trust fund was to pass to the heirs at law of Johanne Smith, or to the executor of her will, or to beneficiaries named therein.

Hence, I think the executor of the will of Hannah Smith (who

is the same person as Johanne Smith named in the will of Louis J. Ellertson) has no claim to the fund he seeks by the cross petition filed in this cause. Indeed, the will of Hannah Smith gives her executor no such authority. Her will, after providing for the payment of debts and making a gift to a cemetery, disposes of her property in two paragraphs, the pertinent provisions of which read: "I give, devise and bequeath the balance of any *cash and personal property* of *which I may die seized and possessed*" (our italics) to named beneficiaries. "It is definitely understood that they are to receive only cash, securities or personal property."

"I give, devise and bequeath my real estate in Everest, Kansas, to" named beneficiaries. There is no gift to anyone of land in Logan county. I think Conrad Ross, as executor of this will, had no authority to maintain the cross petition filed by him in this cause. Neither do I know what he would do with the money he seeks to recover in this case—certainly Hannah Smith's will did not tell him what to do with it.

But I pass that point and return to the consideration of the will of Louis J. Ellertson. By the will, after providing for the payment of certain charges and bequests, the testator divided "the balance of my estate" into five equal parts and created a trust in the following language: "and one of said parts I give, devise and bequeath to V. Jaggar . . . in trust for my sister, Johanne Smith, . . . on the terms and conditions hereinafter stated." Later in the will it is disclosed that the "balance of my estate" consisted of personal and real property, and from the record we are advised that it included the two half sections of land in Logan county, a share of which the executor of the will of Hannah Smith seeks to recover. So the trust fund was an undivided one-fifth of real and personal property. Eliminating conditions which did not arise, the beneficiary of the trust was Johanne Smith, and was personal to her. None of it was to go to her heirs at law, or to an executor, or to beneficiaries of her will.

The trustee was V. Jaggar. By the terms of the will it was his duty, "out of the property left in his care and trust, and out of the income and profits therefrom, pay . . . Johanne Smith, . . . fifty dollars ($50.00) per month during" her natural life. The will further provided "that all moneys, securities and personal property be divided, apportioned and paid out as soon after my death as possible." Carrying out this provision, V. Jaggar, trustee,

would receive the one-fifth share of the balance of the personal property soon after the death of the testator. The will further provided "that my real estate shall be held and managed by my brother, Maselius Mydland, for the benefit of my estate and until such time as in his uncontrolled discretion it can be sold to the best advantage; and upon the sale thereof, the proceeds therefrom shall then be divided and distributed as in the case of my personal property." Under this provision of the will V. Jaggar, as trustee, did not have the care of the real property which was a part of the trust fund. The only property which he had out of which to make payments of $50 per month to Johanne Smith was the share of the personal property turned over to him and in rents from the share of the real estate. He was not entitled to have in his care the corpus of the real estate for payments to Johanne Smith until that real estate was sold and the proceeds divided.

From the record it seems to me that what happened here is clear. V. Jaggar, as trustee, paid the $50 per month to Johanne Smith as long as he had trust funds in his hands available for such payments. Those funds were exhausted in 1931 and no payments were made to her for ten years. It was not through anybody's fault. Likely the testator thought that the share of his personal property placed in the care of the trustee would be ample to make these payments until his brother, Maselius Mydland, thought it to the best advantage to sell the real estate, and that the personal property and the proceeds of the real estate would be ample to make the payments of $50 per month to Johanne Smith as long as she lived. Perhaps he did not anticipate that his personal property would be reduced by litigation which became necessary, nor that his brother Maselius would not find it to be to the best advantage to sell the real property for a period of sixteen years. Yet Johanne Smith in her lifetime made no complaint of either of those situations. No real complaint is made now with respect to them. The result is that a part of the trust fund remained over in the form of land at the time of the death of Johanne Smith, and by the specific terms of the will "the balance of said trust fund then remaining shall revert to and become a part of my estate and shall be divided equally, share and share alike, between my said brothers, Martin Mydland, Tobias Larson, Carl Mydland and Maselius Mydland." In my judgment any interpretation of the will which does not give effect to these provisions is inaccurate.