No. 12,022.

ESTATE OF WESTLAKE.

WESTLAKE, ET AL. *v.* WESTLAKE.

Decided April 16, 1928.

Proceeding involving construction of a will. Judgment for defendant in error.

*Reversed.*

*On Application for Supersedeas.*

1. DESCENT AND DISTRIBUTION—*Husband and Wife—Heir.* In Colorado the wife is heir to the husband.

2. WILLS—*Construction.* In the construction of wills the intent of the testator, if ascertainable, governs.

3. *Construction—Heirs.* Words having a common meaning may be employed in a different sense by a testator, and when that fact appears, they will be so construed. "Heirs" is such a word, and in the instant case is construed to mean "children."

4. WORDS AND PHRASES—*Construction.* When it definitely appears that a word is used in a document in a given sense, that interpretation will follow it until a different intent be as clearly established.

5. WILLS—*Construction—Intestacy.* In construing wills, that interpretation should, if possible, be adopted which avoids partial intestacy. This rule will not permit courts to write into a will a provision clearly omitted by the testator.

6. *Construction—Intestacy.* Under the facts disclosed in the instant case, there is a conclusion of intestacy as to one-half of the estate with a finding that it should be distributed under the statute.

*Error to the County Court of the City and County of Denver, Hon. George A. Luxford, Judge.*

Mr. JOHN S. MACBETH, Mr. WILLIAM W. GRANT, JR., for plaintiffs in error.

Mr. JOHN T. BOTTOM, for defendant in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

DEFENDANT in error petitioned for final distribution under the will of deceased and demanded one-half the estate. Plaintiffs in error filed a like petition, demanding the same property, and to review the judgment entered against them they prosecute this writ and ask that it be made a supersedeas. The sole question here presented is the correct interpretation of the word "heirs" as used in the will, and the result of that interpretation.

George Westlake executed this will here in question June 5, 1897, and died in March, 1903. He left surviving him two sons, George M. and Charles H. At the time the will was executed George M. was married and had two sons, George H. and Thomas H., who are the plaintiffs in error. Their mother died September 9, 1895. Their father is still living. Charles H. was still a bachelor at the time of the death of his father (the testator). Fifteen years thereafter he married Emma, defendant in error. Testator never knew her. Charles H. died May 11, 1927, leaving no children.

Testator by his will gave a small sum in cash to a sister and all the remainder of his property to trustees under the following directions:

(a) "The whole of the net interest and income of my estate shall, during the lifetime of my sons George M. Westlake and Charles H. Westlake be paid and transferred absolutely to them as soon as earned, and in equal proportions.

(b) "In the event of the death of George M. West-lake (father of George H. and Thomas H.) then the interest and income bequeathed to him shall be by the trustees thereafter delivered to the guardian of my grandchildren George H. Westlake and Thomas Hall Westlake, for the benefit of said grandchildren, share and share alike, until such time as Thomas Hall Westlake (the younger of the two) shall have attained the age of twenty-one (21) years, or would have attained that age, if alive, when, and in which event, this portion of my estate (being one-half) shall be paid and transferred absolutely to my grandchildren George H. Westlake and Thomas Hall Westlake, share and share alike.

(c) "In the event of the death of Charles H. West-lake (testator's bachelor son) if he should not marry and dies without leaving *heirs,* then the interest and income bequeathed to him shall be by the trustees thereafter delivered to the guardian of my grandchildren George H. Westlake and Thomas Hall Westlake (plaintiffs in error) for the benefit of said grandchildren, share and share alike, until such time as Thomas Hall Westlake shall have attained the age of twenty-one (21) years, or would have attained that age, if alive; when, and in which event, this portion of my estate (being one-half) shall be paid and transferred absolutely to my grandchildren George H. Westlake and Thomas Hall Westlake, share and share alike.

(d) "In the event of Charles H. Westlake 'bachelor,' marrying and leaving *heirs,* then it is my will that the half of my estate shall descend and be paid to such *heirs.*

(e) * * *

(f) "In case of the death of either of my said grandchildren George H. Westlake or Thomas Hall Westlake, then the survivor shall take the interest which otherwise would have gone to both, if living.

(The parenthetical words "being one-half" appear as above in the will. Other phrases in parenthesis in the foregoing quotation we insert as explanatory. The quoted portion of the will is paragraphed as above. Those paragraphs we have lettered for the convenience of reference.)

(g)  "In case of the death of both of my said grand-children, George H. Westlake and Thomas Hall West-lake, before the time mentioned for the distribution of my estate as herein provided, then it is my will that my estate remaining in the hands of my trustees shall be divided among my *legal heirs* share and share alike."

It will be observed that no portion of the corpus of this estate has been distributed and that the grandsons of the testator, George H. and Thomas H., who were to get one-half, if not all, of the estate have to date received nothing although they are approximately 43 and 38 years old respectively. It was of necessity kept intact during the lifetime of the sons George M. and Charles H. that the income might be equally divided between them. While they both lived the management and distribution was simple, but on the death of Charles H., one-half the corpus was released for distribution. It was claimed by the widow of Charles H. as his heir, under the literal terms of the will, and by the grandsons, George H. and Thomas H. on the theory that the word "heirs" as used in the will was used by the testator in the sense of "children" and should be so construed. If neither of these positions can be maintained then a condition not provided for by the testator has arisen and as to one-half his estate he died intestate.

We think the following propositions are well settled and applicable here:

1.  In Colorado the wife is heir to the husband. *Anderson v. Groesbeck*, 26 Colo. 3, 55 Pac. 1086; *Binkley v. Switzer*, 75 Colo. 1, 223 Pac. 757.

2.  The intent of the testator, if ascertainable and lawful, governs. 28 R. C. L. p. 211, secs. 173, 185; *Platt v. Brannan*, 34 Colo. 125, 128, 81 Pac. 755, 114 Am. St. Rep. 147.

3.  Many words having a given meaning in common use, or in law, may be employed in a different sense by a testator, and when that fact appears they will be so construed. 28 R. C. L. p. 222, secs. 183, 184.

4. The word "heir" is such a word. 40 Cyc. 1459; *Van Dusen v. Sharrar,* 186 Ia. 1082, 173 N. W. 97; *Moon, Admr. v. Stewart,* 87 Ohio St. 349, 101 N. E. 344, 45 L. R. A. (N. S.) 48, Ann. Cas. 1914A, 104.

5. When it definitely appears that a word is used in a document in a given sense, that interpretation will follow it until a different intent be as clearly established.

6. An interpretation should, if possible, be adopted which avoids partial intestacy. But this rule will not permit courts to write into a will some provision clearly omitted by the testator. 28 R. C. L. p. 227, sec. 189.

In the beginning we find the technical interpretation of the word "heirs" inconsistent with other unambiguous language in this will. When testator directs what shall be done with that half of the income bequeathed to Charles H. "if he should not marry and dies without leaving *heirs*," he can not mean what he seems to say, because though Charles H. had neither wife nor children he would still have "heirs." When testator directs what shall be done with that half of his estate, the income of which he has bequeathed to Charles H., in the event of his "marrying and leaving *heirs*," the presumption is that he uses the word in the same sense as in the preceding paragraph since there is in the will no hint to the contrary. Once only in this testament do we find the word clearly used in its technical sense. That is in paragraph "g," and there (the only place in the entire document) it is carefully qualified by the adjective "legal." If we give to this word "heirs" its technical interpretation we must say that the intent of the testator was to give one-half his estate to a stranger and none of it to his sons; that if both sons (the one a widower and the other a bachelor) married and thereafter died, the widow of one should take nothing while the widow of the other took one-half; that if the bachelor married and had two children those children should each take but one-eighth of the estate, while their mother, a stranger, and his other grandchildren, should each take one-fourth.

All this is unnatural and there is nothing in the record to reconcile it with reason.

The alternative is to interpret "heirs" as meaning "children." Then the plain intent of the testator was to divide the income of the estate equally between his children and the share of the corpus which each of those children would otherwise take equally between their children. This is reasonable and natural and consistent with the record.

Construing then this word "heirs" as "children" we are still unable to find for plaintiffs in error. Three contingencies confronted testator: (a) "If Charles H. should not marry and dies without leaving children." That was provided for. (b) "If Charles H. marry and leave children." That also was provided for. (c) "If Charles H. marry and leave no children." That was entirely unprovided for and it occurred. Nor should we resort to any strained construction to obviate this difficulty, because it is not the only one possible under the terms of the will. If Charles H. had married and died without children, as he did, and plaintiffs in error had both died before the date of distribution, but their father, George M., had remarried and had children by his second wife, these grandchildren would be unprovided for in the will save as they should take under paragraph "g." This forces us to the conclusion of intestacy as to the one-half of this estate here in controversy. It must therefore be distributed under the statute. On the record before us half of it (being one-fourth of the entire estate) would go to defendant in error and the other half to the father of plaintiffs in error. There may, however, be other heirs and additional evidence may be necessary. The judgment is accordingly reversed and the cause remanded for further proceedings in harmony herewith.

All of the Justices concur in the order of reversal, but Justices Whitford, Adams and Campbell dissent from the conclusion of intestacy. They are of the opinion that the will should be construed in favor of plaintiffs in error and that judgment should be for them.