## No. 18,176.

STATE OF COLORADO *v*. EMMA JANE ROGERS, ET AL.

(344 P. [2d] 1073)

Decided September 8, 1959.   Rehearing denied November 2, 1959.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. NEIL TASHER, Assistant and In-

heritance Tax Commissioner, Mr. FLOYD B. ENGEMAN, Assistant, for plaintiff in error.

Mr. CHARLES R. ENOS, Mrs. BERNICE M. BUCHLER, for defendant in error Emma Jane Rogers.

Messrs. HUGHES & DORSEY, Mr. W. CLAYTON CARPENTER, Mr. THOMAS KEELY, for defendant in error International Trust Company.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

WE shall refer to the parties by name rather than the order in which they appeared in the trial court or appear in this court.

Franklin Ballou, Sr., died on March 20, 1903, a resident of Colorado, leaving a last will and testament which created a testamentary trust. At his death Mr. Ballou left as his sole surviving heirs at law his wife, May Scott Wilson Ballou; two sons, Franklin Ballou, Jr., and Norris Pitcairn Ballou; and a daughter, Una Ballou. The latter married thereafter and was known as Una Ballou Brinton.

The will of Franklin Ballou, Sr., was admitted to probate in the County Court of Denver, Colorado. The testamentary trust therein provided a life income for the widow, who, however, filed her statutory election and took one-half of the estate outright, hence this part of the testamentary trust never came into operation. In relation to the three children the trust provided as follows:

"Second: (A) * * * (The one-half in trust for Mrs. Ballou.)

"(B) One sixth of said trust fund shall be held by my said Trustee for the use and benefit of my son, *FRANK-*

*LIN BALLOU, JR.,* and the income derived therefrom shall be paid to him quarterly, and in ten years from my death he shall receive one half of the principal thereof, and the balance in ten years thereafter.

"(C) One sixth of said trust fund shall be held by my said Trustee for the use and benefit of my son, *NORRIS PITCAIRN BALLOU,* and the income derived therefrom shall be paid to him quarterly, and in ten years from my death he shall receive one-half of the principal thereof, and the balance in ten years thereafter.

"(D) The remainder of said trust fund, viz: One-sixth thereof, shall be held by my said Trustee for the use and benefit of my daughter, *UNA BALLOU,* and the income derived from the same shall be paid to her, for her sole and separate use, upon her sole receipt, and free from the control of any husband with whom she may hereafter marry, and not in compliance with any assignment or anticipation. Upon the death of my said daughter Una my said Trustee shall pay over the principal to her children then living, if any, and to the issue of any deceased child by right of representation; or, if my said daughter shall leave no children, nor the issue of any deceased child living at the time of her death, then to my said two sons in equal parts, share and share alike, and in case of the death of either or both of them, to their lawful issue surviving, the lawful issue of a deceased son to take the share the parent would have taken if living, and in case either of my said sons shall be dead without lawful issue, then to the survivor or the lawful issue of the survivor.

"(E) If either of my said sons shall die before the period fixed for the distribution of his share of my estate, leaving any lawful issue surviving, the lawful issue of either son so dying shall inherit the share in said trust fund which the parent would have inherited if living; but, if either of my said sons shall die without lawful issue before the distribution period the portion of the son so dying shall go and belong to my surviving chil-

dren in equal parts, share and share alike, or to their lawful issue surviving, the lawful issue of a deceased child to take the share the parent would have taken if living."

May Scott Wilson Ballou, the widow, died on or about October 2, 1922. Franklin, Jr., died in 1928, leaving no child or children surviving him; and no child or children of any deceased child surviving him. Norris Pitcairn Ballou died in 1951; he left no issue surviving him, and no issue of any deceased child surviving him. Una Ballou Brinton died on or about May 15, 1954, leaving no surviving issue and leaving no issue of any deceased child surviving her. She did, however, leave a last will and testament disposing of all her estate including the reversionary interest here in dispute.

Before Franklin, Jr., died in 1928 he was entitled to and did receive in 1923 the balance of his distributive share under subparagraph (B). Before Norris Pitcairn died in 1951 he was entitled to and in 1923 received the balance of his distributive share under subparagraph (C). Thus the remainder interests provided in subparagraphs (B) and (C) vested and were disposed of and need not be further considered here. It is the corpus to be distributed upon the death of Una which is the subject of this controversy.

Claimant Emma Jane Rogers (born Hanna) is the great-niece of Franklin Ballou, Sr. She is a descendant of his sister and claims this corpus under a resulting trust asserting that she was the sole living heir of the testator at the death of Una. In other words, her claim is based upon the premise that the heirs at law of the testator, for the purpose of this distribution, are to be determined as of Una's death, not at the time of testator's death.

Caroline Adelia Ballou is the widow of testator's nephew (the nephew being the son of a brother of Franklin Ballou, Sr.). She first filed an answer in the trial court claiming some interest in the estate but this

was later withdrawn and she makes no appearance in this court. There was no appearance in the trial court by any unknown defendants. The trial court, before the hearing, entered the default of both Caroline and all unknown persons.

The International Trust Company, as testamentary trustee, administered the trust until the death of Una on May 15, 1954, at which time the one-sixth interest, in which Una had a life estate under sub-paragraph (D), consisted of the sum of $24,590.03 and a mining claim located in Clear Creek County, Colorado. The International Trust Company on or about April 12, 1955, paid the amount remaining in its hands as trustee into the escheat fund of the State of Colorado under the provisions of C.R.S. '53, 152-14-14 (3). The mining claim remained with and in the name of the testamentary trustee.

The State of Colorado claims no interest in this fund or in the mining claim. It sued out its writ of error in this court because the trial court, upon trial of the issues below, based on Emma Jane Rogers' complaint, determined that she was entitled to the residuary property in question. The state acted by virtue of the authority granted it by C.R.S. '53, 152-14-14 (5), stating that it is a stake holder between Emma Jane Rogers, Caroline Adelia Ballou, and the beneficiaries under the last will and testament of Una Ballou Brinton — the latter having devised and bequeathed said property.

As we view the record, the question to be determined is:

MAY A LIFE TENANT INHERIT THE REVERSIONARY INTEREST RESULTING FROM THE FAILURE OF A CONTINGENT REMAINDER, SUCH FAILURE NOT BEING APPARENT UNTIL THE LIFE TENANT'S DEATH?

Examining the wording of sub-paragraph (D) we find that the testator failed to provide what happened to the remainder in (D) if at least one of the various con-

tingencies provided for did not come to pass. The problem thus evolves into one of the devolution of beneficial interests limited alternatively.

■ The general rule is that in the construction of a will the intention of the testator, if it can be determined, is to prevail. *Westlake v. Westlake* (1928), 83 Colo. 540, 266 Pac. 714; *Page on Wills,* Lifetime Edition, Vol. 2, §922, p. 825. The intent is found in the total will and should be applied if not in conflict with positive rules of law. Interpretations should be adopted if possible which will avoid partial intestacy. *Westlake,* supra.

■ Another general rule, requiring no citation of authority, is that the heirs of a testator are determined as of the date of his death. This is also the general rule where contingent remainders in testamentary trusts exist. See 27 A.L.R. (2d) 694, §4. Courts, however, have recognized exceptions to the former rule — such as when the testator *expressly* demonstrates in his will that he desires his heirs to be determined at a later date for the purpose of taking under his will. *Hoover v. Bank of America* (1936), 116 Cal. App. (2d) 529, 60 P. (2d) 1010. Sometimes the intention has been implied that the heirs are to be determined at a time after testator's death. See discussion in *Tyler v. City Bank Farmers Trust Co.* (1943), 314 Mass. 528, 50 N.E. (2d) 778; also see *Doggett v. New England Trust Co.* (1951), 327 Mass. 167, 97 N.E. (2d) 401; and see discussion in 27 A.L.R. (2d) 704, et seq.

In this case the testator made no express or implied statement in his will as to when his heirs should be determined so the general rule applies that they were determined at the instant of his death.

We next turn to the question as to what happens to lapsed shares such as occurred here where the alternative remainder failed. In *Velders v. Gaines* (1920), 112 Misc. Rep., 184 N.Y.S. 100, the court states: " * * * it has been settled that when a trust estate is created by will, with income to the use of a life beneficiary and re-

mainder to the issue of the cestui que trust, and the life beneficiary dies without issue, the testator who created the trust estate is assumed to have died intestate as to the part of his estate embraced within the trust, and, further, that if the life tenant dies intestate and without issue, the trust estate falls to the next of kin of the testator as of the time of his death, and must be distributed under the statute of distribution. This is so even when the life tenant is the only one answering the description of next of kin."

The same rule has been applied in many other cases among which are *Voorhees v. Singer* (1907), 73 N.J. Eq. 532, 68 Atl. 217; *Knickerbocker Trust Co. v. King* (1908), 126 App. Div. 691, 111 N.Y.S. 192; *Ford v. Wilson* (1913), 10 Del. Ch. 124, 85 Atl. 1073; *Springfield Safe Deposit & T. Co. v. Dwelly* (1914), 219 Mass. 65, 106 N.E. 554; *Re Kane* (1936), 161 Misc. 767, 293 N.Y.S. 39, affirmed without opinion in 1937, 251 App. Div. 710, 296 N.Y.S. 1005.

This rule, which has long been followed in many jurisdictions, goes back at least to the case of *Keating v. Smith* (1849), 5 Cush. (Mass.) 232, where the court held that the testatrix' daughter, to whom was given an equitable life estate in residuary property as to which no provision was made for disposition after her death, shared in the equitable reversion in the realty and personalty with the sons of the testatrix, the other heirs at law. The court said: "There is no incongruity in Anna's [the life tenant] having an equitable life estate in the whole, and an equitable reversion in a part, which cannot take effect in possession until after her own decease. The same thing might occur in respect to a legal estate. Suppose A., seised of land in fee-simple, leaves three children, B., C. and D., and devises an estate for life in the land to B., and makes no further disposition. The reversion would vest in the children of A., as tenants in common; not by force of the will, but by the law of descent; so that B. would have a life estate in the whole,

and a vested reversion, in fee, of one undivided third part."

In the early case of *Doane v. Mercantile Trust Co.* (1899), 160 N.Y. 494, 55 N.E. 296, the court said:

"We perceive no incongruity in the testator's wife and daughter constructively taking the fund, as to which he died intestate, as his next of kin as of the time of his death."

There is some authority *contra* to what now appears to be accepted as the general rule. See *Walters v. Neafus* (1910), 136 Ky. 756, 125 S.W. 167; and see 128 A.L.R. 446, et seq., and 27 A.L.R. (2d) 704, et seq., for a discussion of the problem and cases.

We perceive no difference in the applicability of the rule (and do not see why there should be one) to those cases where the interests are limited alternatively as distinguished from those where they are limited to the issue of the life tenant.

In *Wilder v. Holland* (1897), 102 Ga. 44, 29 S.E. 134, the court said: "There being nothing in the will expressly directing that reversion to vest in any other person, it necessarily vested in the heirs at law; and this would be true, even if the intention to disinherit the heirs was ever so manifest. The heir cannot be disinherited, unless the property be expressly devised to some other person."

◼ We conclude that on the death of testator Franklin Ballou, Sr., the right to this reversion vested in his then heirs at law, who were his widow and three children. This is in accord with the reasoning of *Sconce v. Neece* (1954), 129 Colo. 267, 276, 268 P. (2d) 1102. Our statute of descent and distribution, C.R.S. '53, 152-2-1, under the facts here presented, then vested its ownership in Una after the death of her mother and her two brothers, assuming they died intestate and that she was their sole heir at law, and it then passed under her last will and testament. *Velders v. Gaines,* supra.

The judgment of the trial court is reversed and the

cause remanded with directions to determine the matter in accordance with the views herein expressed, subject, however, before final distribution, to the provisions of C.R.S. '53, 152-14-14 (5).

MR. CHIEF JUSTICE KNAUSS and MR. JUSTICE DAY not participating.