(640 P.2d 878)
No. 52,833

M. CANDICE COX, NANCY K. DAIN, and JOHN T. CHERRYHOLMES, *Plaintiffs-Appellees,* v. FLOYD FREEMAN FORRISTALL, *et al., Defendants-Appellees,* and DELILAH STACKLEY, *Defendant-Appellant.*

Opinion filed February 11, 1982.

*Ervin E. Grant,* of Grant & Fillmore, of El Dorado, for appellant.

*Ronald J. Wilkinson,* of Matlack, Foote, Scott, Joseph & Wilkinson, P.A., of Wichita, for appellees M. Candice Cox, Nancy K. Dain and John T. Cherryholmes.

*Richard C. King,* of Woodward, Woodward & King, of El Dorado, for appellees Ernest and Leland Stackley.

Before ABBOTT, P.J., PARKS and MEYER, JJ.

MEYER, J.: This case involves the interpretation of a will in a partition action.

Appellees M. Candice Cox, Nancy K. Dain, and John T. Cherryholmes brought this action against the devisees of B. T. Freeman for partition of real estate and for a determination of ownership of certain farm property which passed to said devisees pursuant to a will of B. T. Freeman.

The case was presented to the trial court on the following stipulation of facts:

"1.   Benjamin Tolliver Freeman, a/k/a B. T. Freeman, died November 18, 1933, and was preceded in death by his wife, Ida Elizabeth Freeman.

"2.   At his death, B. T. Freeman was survived by 11 children, five of whom, as follows, have subsequently died without issue:

Miranda Catherine Freeman
Mary Edna Hay
Frances Darlene Rosier
Sarah Margaret Freeman

Alice Lee Freeman;
and five of whom have subsequently died leaving issue, as follows:
Grace Stackley
Anna Laura Cherryholmes
Albert T. Freeman
Bonnie Forristall
Nellie May Hanson;
and that one child of B. T. Freeman is living, as follows:
Delilah Stackley.
"3. That the issue of the deceased children of B. T. Freeman are as follows:
Grace Stackley:
  Ernest Stackley
  Leland Stackley
Anna Laura Cherryholmes:
  James T. Cherryholmes
  Clifford Cherryholmes
Albert T. Freeman:
  Freda Evans
  Arlene Galliart
  Pat Foreman
Bonnie Forristall:
  Floyd Forristall
  John Forristall
  Hope Albert
  Philena Grier
Nellie Hanson:
  Nathan Hanson
  Irwin Hanson
  Hugh Hanson
"4. That Clifford Cherryholmes has conveyed his interest in the subject matter of this action to his children, in equal shares, said children being the plaintiffs herein as follows:
M. Candice Cox
Nancy K. Dain
John T. Cherryholmes;
and that a copy of said conveyance is attached hereto and made a part hereof.

"5. That since the commencement of this action, John Forristall has died and that his interest herein shall pass to and be administered by the personal representative of his estate.

"6. That the Last Will and Testament of B. T. Freeman granted life estates in the subject matter of this action to Miranda Catherine Freeman and Alice Freeman, said life estates being terminable upon the marriage of either of said life tenants. That neither said life tenant ever married.

"7. That Miranda Catherine Freeman died October 19, 1951, and that Alice Freeman, a/k/a Alice Lee Freeman died July 4, 1980. That copies of their respective death certificates are attached hereto and made a part hereof and that certified copies of their death certificates have been or will be filed with the Register of Deeds of Butler County, Kansas, the costs of said filing to be made a part of the costs of this case.

"8. That the sequence of death of the 10 deceased children of the 11 children of B. T. Freeman who were living at his death is as follows:
  (1) Miranda Catherine Freeman
  (2) Mary Edna Hay
  (3) Grace Magdalene Stackley
  (4) Frances Darlene Rosier
  (5) Anna Laura Cherryholmes
  (6) Albert Tolliver Freeman
  (7) Bonnie Ellen Forristall
  (8) Nellie May Hanson
  (9) Sarah Margaret Freeman
  (10) Alice Freeman
Delilah Isabelle Stackley is living.

"9. That the Estate of B. T. Freeman was administered in the Probate Court of Butler County, Kansas, as Case No. 5108, and that the Journal Entry of Final Settlement thereon was dated February 16, 1935, and duly filed in said probate court proceeding, and that the Order of the Inheritance Tax Commission of the State of Kansas, being "General Form 25" was also duly filed in said case. That copies of both documents are attached hereto and made a part hereof. That the Inheritance Tax Commission form "General Form 25", a partial copy of which is attached hereto, contains an overflap entitled "Schedule A" and that said overflap overlays Item 5 of said form which reads as follows:
  '5. The decedent died testate —'
and designates those persons listed on "Schedule A" as the devisees and legatees under the will of the decedent.

"10. That the Last Will and Testament of B. T. Freeman was duly admitted to probate in Case No. 5108 of the Probate Court of Butler County, Kansas, and that a true copy of said Last Will and Testament is attached hereto and made a part hereof.

"11. That upon the death of Alice Lee Freeman on July 4, 1980, the life tenancy usage of the subject matter of this action terminated and the remaindermen established under the Last Will and Testament of B. T. Freeman became entitled to possession of their respective interests in said subject matter.

"12. That the within partition action was filed August 26, 1980, and that service of process has been had upon all parties defendant and all persons having or claiming an interest in the subject matter hereof, and that Floyd Forristall, Irwin Hanson, and James T. Cherryholmes, have additionally entered their general appearance herein.

"13. That the subject matter of the within partition action is:
  A. The SE/4, Sec. 23, Township 24 South, Range 5 East, Butler County, Kansas;
  B. The SW/4, Sec. 23, Township 24 South, Range 5 East, Butler County, Kansas;
  C. The SW/4, Sec. 24, Township 24 South, Range 5 East, Butler County, Kansas;
  D. 5 acres on the East side of the SE/4 of the SE/4, Sec. 22, Township 24 South, Range 5 East, Butler County, Kansas;

and that parcel D may require more precise description by survey or agreement with the adjoining land owner.

"14.    That this court has jurisdiction of the subject matter and of the parties necessary to make a determination of ownership and that this matter is properly before the court."

The will of B. T. Freeman devised a life estate in the farm to his daughters Miranda Catherine Freeman and Alice Freeman. The will provided that in the event of marriage of either life tenant, the life interest in the farm would remain in the other tenant. Further, the will provided:

"And the life interest of both of my said daughters having terminated by marriage, the said farm shall become and be the property of my children, share and share alike, namely: Miranda Catherine Freeman, Alice Freeman, Bonnie Freeman Forrestall [sic], Nellie Freeman Hanson, Annie Freeman Cherryholmes, Grace Freeman, Frances Freeman, Enda [sic] Freeman, Sarah Freeman, Delilah Freeman Stackley, and Albert Freeman. In the event of the death of either of my said children above named prior to the expiration of the life interest of my said daughters, Miranda Catherine and Alice, the share of such child or children so dying shall descend to, become and be the property of the then living issue of their body, and in the event of their dying without issue, the share of such child or children so dying shall descend to, become and be the property of my children then living, share and share alike."

The court interpreted the will so that the word "children" as used in the clause "my children then living" also includes, per stirpes, the grandchildren of B. T. Freeman if they are children of a deceased child of B. T. Freeman who died prior to the termination of the life estates established in the will.

The court held that the remainder interests in the farm vested in the remaindermen upon the death of B. T. Freeman and that the share of any child of B. T. Freeman who later died without issue descended upon said death to the heirs of B. T. Freeman, per stirpes. The court found that the intent of B. T. Freeman was to have the share of any child of his who died without issue pass per stirpes to the children *or grandchildren* of B. T. Freeman exclusive of spouses of any deceased child of B. T. Freeman.

The court determined the interests of the parties to be as follows:

| Miranda* | Alice* | Mary Edna# | Grace | Frances# |
|----------|--------|------------|-------|----------|
| Life Est. to 10/19/51 | Life Est. to 7/4/80 | -0- | 1/6 | -0- |
|  |  |  | Ernest 1/12 Leland 1/12 |  |

| Anna | Albert | Bonnie | Nellie |
|------|--------|--------|--------|
| 1/6 | 1/6 | 1/6 | 1/6 |
| James 1/12 Clifford 1/12** | Freda 1/18 Arlene 1/18 Pat 1/18 | Floyd 1/24 John 1/24 Hope 1/24 Philena 1/24 | Nathan 1/18 Irwin 1/18 Hugh 1/18 |

| Sarah# | Delilah |
|--------|---------|
| -0- | 1/6 |

* Life Tenant

# Died Without Issue

** Clifford conveyed interest to M. Candice Cox (1/36), Nancy K. Dain (1/36), and John T. Cherryholmes (1/36).

Delilah Stackley, appellant, brings this appeal from said interpretation.

The basic argument is over what happened to the shares of the children who died without issue. Appellant maintains that upon the death of each child who died without issue, their remainder interest passed to B. T. Freeman's other children who were living at the time of the death of said child, thus preventing that share from passing to the issue of B. T. Freeman's children who had died prior to the children dying without issue.

Appellant contends the court erred in giving res judicata effect to a previous statement on an inheritance tax form.

The trial court took judicial notice of the probate court case of B. T. Freeman and stated that it was without power to disturb the findings of the probate court made therein, as were made manifest in the order of the Kansas Inheritance Tax Commission. The order stated that the devisees and legatees were the two life estates in Miranda and Alice, and the remainder in the children of B. T. Freeman, share and share alike. Appellant's argument of error is based on the assumption that the court used said statement in deciding the distribution.

Regardless of the statement, it is obvious the probate order and the inheritance tax statement were not the basis for the trial court's distribution. While the court took judicial notice of the proceedings, the distribution was based upon interpretation of the last will and testament of B. T. Freeman, itself, and not on the statement in the Inheritance Tax Commission order. The court made this clear in the following parts of its journal entry:

"That the court adopts the following rule of law as being applicable to the interpretation of the Last Will and Testament of B. T. Freeman, as said rule of law is stated and approved in *Jameson, et al., v. Best, et al.,* 124 Kan. 633, 636:

" 'The heirs of a testator are favored by the policy of the law and cannot be disinherited upon mere conjecture, and when the testator intends to disinherit them he must indicate that intention clearly, either by express words or by necessary implication. . . . A necessary implication is one which results from so strong a probability of intention that an intention contrary to that imputed to the testator cannot be supposed . . . Instead the law favors that construction of a will which conforms most nearly to the general law of inheritance. Accordingly if a will is capable of two constructions, one of which will exclude the issue of a deceased child, and the other permit such issue to participate in a remainder limited upon a life estate given to the ancestor, the latter construction is to be adopted.' (28 R.C.L. 229, 230)

. . . .

"[T]he court specifically finding that the intent of B. T. Freeman was to have the share of any child of his who died without issue pass per stirpes to the children or grandchildren of B. T. Freeman exclusive of spouses of any deceased child of B. T. Freeman."

Appellant also claims the court erred in interpreting the will so that it found that the testator intended "children of the testator then living" to include issue of predeceased children of the testator.

As stated earlier, the problem with interpretation of this will is the provision that the share of children dying without issue descends to "children then living, share and share alike."

The general rules of construction are as follows:

"The primary function of the court in the interpretation of wills is to ascertain the testator's intent as derived from the four corners of the will and, once ascertained, the intent will be executed unless contrary to law or public policy. *In re Estate of Cline,* 170 Kan. 496, 227 P.2d 157 (1951).

"In *Johnston v. Gibson,* 184 Kan. 109, 334 P.2d 348 (1959), we held:

" 'Where a court, either trial or appellate, is called upon to determine the force and effect to be given the terms of a will, its first duty is to survey the instrument in its entirety and ascertain whether its language is so indefinite and uncertain as to require the employment of rules of judicial construction to

determine its force and effect; and where from an analysis of the entire instrument no ambiguity or uncertainty is to be found in its language, the intention of the testator being clearly and unequivocally expressed, there is no occasion to employ rules of judicial construction and the will must be enforced in accordance with its terms and provisions.' Syl. 3

"The rules of construction were summarized in *In re Estate of Ellertson*, 157 Kan. 492, 142 P.2d 724 (1943):

" 'There is no occasion for employing any rules of judicial construction where the intention is expressed clearly and unequivocally in the will (*National Life Ins. Co. v. Watson*, 141 Kan. 903, 905, 44 P.2d 269). The will is to be construed so as to give effect to every part thereof, providing an effect can be given to it which appears to be consistent with the purposes of the testator as gathered from the entire will, and to effectuate rather than defeat the intention of the testator. (*Ernst v. Foster*, 58 Kan. 438, 49 Pac. 527; *Selzer v. Selzer*, 146 Kan. 273, 69 P.2d 708.) Controlling significance is not to be given to one of the terms of devise or bequest and other terms ignored. (*Johnson v. Muller*, 149 Kan. 128, 86 P.2d 569.) The court must put itself as nearly as possible in the situation of the testator at the time he made the will and from a consideration thereof and the language used in every part of the will, determined the purposes and intentions of the testator (*Dyal v. Brunt*, 155 Kan. 141, 123 P.2d 177). All of the above rules are only phases of the fundamental rule that the intention of the testator is to be gathered from the will as a whole and that intent must prevail if it is consistent with the rules of law (*Zabel v. Stewart*, 153 Kan. 272, 109 P.2d 177). The above cases are illustrative. Many other of like effect might be cited. It is also to be borne in mind that a will speaks from the time of the testator's death, unless it plainly shows a contrary intention, and is to be construed as operating according to conditions then existing. . . .' pp. 496-497.

"We elaborated upon these rules in *Russell v. Estate of Russell*, 216 Kan. 730, 534 P.2d 261 (1975):

" 'In construing a will courts must (*a*) arrive at the intention of the testator from an examination of the whole instrument, if consistent with rules of law, giving every single provision thereof a practicable operative effect, (*b*) uphold it if possible, (*c*) avoid any interpretation resulting in intestacy when possible, (*d*) give supreme importance to the intention of the testator, and (*e*) when the language found in such instrument is clearly and unequivocally expressed determine the intent and purpose of the testator without resort to rules of judicial construction applicable to the interpretation of an instrument which is uncertain, indefinite and ambiguous in its terms.' Syl. 1.

"See also *In re Estate of Wernet*, 226 Kan. 97, 596 P.2d 137 (1979)." *In re Estate of Berryman*, 226 Kan. 116, 118-9, 596 P.2d 1120 (1979).

In *Schauf v. Thomas*, 209 Kan. 592, 599, 498 P.2d 256 (1972), it is stated:

"Where there are definite and unambiguous expressions in a will, other expressions that are capable of more than one meaning must be construed, if possible, so as to harmonize them with the plain provisions. To ascertain the intention of the

testator and the extent and character of the bequests and devises of his will, all provisions of the will must be read and construed together, and one provision must not be given controlling significance by ignoring other provisions of the will. [Citation omitted.]"

Also, "The law presumes that a testatrix intends to treat her children equally when the meaning of the will is doubtful or obscure." 209 Kan. at 600.

The Supreme Court, in *In re Estate of Lester,* 191 Kan. 83, 87, 379 P.2d 275 (1963), stated:

"[O]ther things being equal, there is a presumption against any intention on the part of a testator to disinherit his legal heirs *who are favored by the policy of the law and may not be disinherited by mere conjecture.* When a testator intends to disinherit those who would take under the statutes of descent he must indicate that intention clearly by plain words, express devise to others, or necessary implication. By 'necessary' implication is meant one which results from so strong a probability as to the testator's meaning that an intent contrary to that imputed cannot be supposed. The presumption against disinheritance is recognized especially in the absence of unfriendly relations existing between the testator and his descendants. [Citations omitted.]"

Appellant's interpretation states that as each child dies without issue, that share passes to the remaining children of B. T. Freeman who are alive at the time of the death of said child.

The trial court's interpretation looks to who is living at the termination of the life estate and passes the shares of the children dying without issue to the remaining children and grandchildren of B. T. Freeman living at the termination of said life estate. This divides the shares equally among the remaining interests whereas appellant's interpretation gives the last to die the biggest shares. Under appellant's interpretation, the issue of the earliest of B. T. Freeman's children to die lose part of the inheritance; if any of those children subsequently die without issue, the inheritance bypasses them and passes only to those children of B. T. Freeman who are alive.

The provision regarding the passage of the shares of children without issue is ambiguous in two respects.

First, the phrase "children then living" is ambiguous because it is not clear when "then" refers to; *viz.,* whether one looks to the time of the successive deaths of each child without an heir, or at the death of the last life tenant.

Secondly, under the previous phrase, the share of each of B. T. Freeman's children is to pass to their issue if they die prior to the

expiration of the life interest. It is difficult to harmonize the two phrases unless "children" is interpreted to mean children and grandchildren.

We have found two cases in Kansas where the word "children" was held to include "grandchildren."

In *In re Estate of Works,* 168 Kan. 539, 213 P.2d 998 (1950), a will devised real estate to the testator's five children. The will further provided:

" 'The above bequests and gifts of my real estate are made to my children heretofore named upon the condition that they and each of them shall hold the same during their lifetime, and at the death of any one of them the real estate herein bequeathed and devised shall descend to their legitimate children. And in case any one or more of the children above named, should die without legitimate issue, then the share above given and devised to such childless devisee shall descend to and become the property of their brothers and sisters, children of mine who shall survive, share and share alike.' " p. 540.

In *Works,* when the testator died, all of his children were living. At the time of the testator's death, his son Charles had two living children, Warren and Clark. Clark, however, predeceased his father Charles, but had three children, Charles, Paul and Mary Ella. The issue was whether Warren, the one living child of Charles, received the entire remainder in the land, or whether Warren took only one-half of the remainder and the three children of Clark took the other half. The court held that Warren took one-half and the three children of Clark took the other half, even though Clark predeceased Charles, the son of the testator.

The court stated:

" 'Although the word "children" is not ordinarily construed to include grandchildren, it is properly construed to include grandchildren when the context, or the surrounding facts and circumstances, in case of ambiguity, make it clear that the grantor so intended.

" 'If there appears to be a doubt or uncertainty as to the grantor's intention in using the word "children" there is a reasonable presumption against disinheritance of a grandchild whose parent is dead.' " 168 Kan. at 543-4, citing from *Bennett v. Humphreys,* 159 Kan. 416, Syl. ¶¶ 6, 7, 155 P.2d 431 (1945).

In *Bennett v. Humphreys,* 159 Kan. 416, 417, 155 P.2d 431 (1945), land was deeded to John Bell Bennett. The deed stated, in part:

" 'It is part of consideration of this deed that John Bell Bennett cannot sell this property during his life time and at his death is to be divided equally among his children.' "

At the time of the death of the life tenant, John Bennett, there was only one child living. However, another child had predeceased the life tenant, leaving a grandchild. The court held that the grandchild and the child took equally, citing the above rule.

Since certain terms of decedent's last will are ambiguous, it seems clear to us that the trial court attempted an interpretation of that will which it felt would reflect the intent of the decedent. Based upon *Jameson v. Best,* 124 Kan. 633, 261 Pac. 582 (1927), and *Bennett v. Humphreys,* 159 Kan. 416, we conclude the trial court was correct.

Affirmed.