**In the Matter of the ESTATE OF Thomas E. JENKINS, Deceased.**

**FIRST INTERSTATE BANK OF DENVER, Petitioner–Appellee,**

v.

**Mary E. TAYLOR, Terry Robert Mesch, Sherry Marie Mesch, Mary Frances Machinal, and Gary Willard Mesch, Respondents–Appellees and Cross–Appellants,**

v.

**James Thomas McCLAIN, Respondent–Appellant and Cross–Appellee.**

Nos. 93CA0229, 93CA0831.

Colorado Court of Appeals, Div. II.

Aug. 25, 1994.

Rehearing Denied Sept. 22, 1994.

Certiorari Granted March 6, 1995.

No appearance for First Interstate Bank of Denver.

Durham & Baron, Paul J. Hanley, Denver, for respondents-appellees and cross-appellants.

Don A. McCullough, Denver, for respondent-appellant and cross-appellee.

Opinion by Judge CRISWELL.

Respondent, James T. McClain, appeals from orders of the Denver Probate Court determining that he is not a beneficiary of a testamentary trust established by the will of Thomas E. Jenkins (testator). McClain also appeals from the probate court's order awarding costs and attorney's fees to respondents Terry R. Mesch, Sherry M. Mesch, Mary F. Machinal, Gary W. Mesch (the Mesch grandchildren), and Mary E. Taylor. We affirm.

The facts here are essentially undisputed. The testator died in 1946, leaving a will containing a testamentary trust and a codicil thereto, which he had executed in 1944. At the time of execution, the testator had two daughters, respondent Mary E. Taylor and Jane Taylor. Mary had one child, Teddy Ann, at the time the will was executed in 1944, while Jane had no children. Both daughters and Teddy Ann were specifically provided for in the testator's will. Jane and Teddy Ann are now deceased.

It is undisputed that Jane was sterilized at the testator's behest in the mid–1930's, before his execution of the will. Further, Mary was at the time of execution incapable of having any additional children. Testator was aware of his daughters' infertility at the time he executed his will.

Upon the testator's death in 1946, both daughters and Teddy Ann began to receive monthly disbursements as provided by the trust. After his death, Teddy Ann bore four children (the Mesch grandchildren), who are parties to this appeal.

In 1949, a neighbor, in return for Jane's payment of hospital expenses, "gave" her a new-born baby (respondent James · T. McClain), whom she proceeded to raise as her own son. The probate court concluded that James was equitably adopted by Jane, but that she had never legally adopted him.

First Interstate Bank, as trustee under the testator's testamentary trust, filed a petition to determine whether James was a beneficiary of that trust. James later filed a motion requesting that the probate court determine the ultimate beneficiaries of the property of the trust upon its termination.

The probate court concluded that, although James had been equitably adopted by Jane, he was not a beneficiary of the trust. It concluded that, upon the death of Mary, the ultimate beneficiaries of the trust would be the surviving Mesch grandchildren. It also awarded costs and attorney's fees, incurred in opposing James' claim, to Mary and to the Mesch grandchildren.

## I.

## A.

James first asserts that the trial court erred in determining that the testator intended to exclude any adopted children of his daughters as beneficiaries of his testamentary trust. We disagree.

The testator's will speaks to the disposition of the trust proceeds as follows:

*SECOND:*

. . . .

(c) In the case of the death of either of my said daughters without issue then the monthly payments to the surviving daughter shall be increased to One Hundred Fifty Dollars ($150) per month, and in the event such daughter so dying shall be survived by *child or children, her lawful issue,* then the one hundred dollars per month herein provided for such daughter shall be used by my trustee for the support, maintenance and education of such surviving *child or children,* except that in the case of my daughter being survived by any *children* other than Teddyann [sic] Fellows then the provisions in this paragraph contained shall be for such other *children* only and Teddyann [sic] Fellows shall receive as provided in paragraph (d) hereof;

. . . .

(e) Upon the death of both of said daughters and when all of the living issue of both of said daughters shall have reached the age of twenty-one (21) years, then my trustee shall divide and distribute the remainder of the trust estate to such then surviving *child or children,* one-half to the *child or children* of Mary and one-half of the *child or children* of Jane, such children to take equally but per stirpes and not per capita. If there be no *child or children* of either of my said daughters then living then all of said trust estate shall be distributed to the *child or children* then surviving of the other daughter. (emphasis supplied)

 If the terms of a will are unambiguous, extrinsic evidence may not be considered to determine the testator's intent. However, if the language of a will, although clear on its face, is susceptible of more than one meaning when applied to external circumstances, a latent ambiguity exists and extrinsic evidence must be considered. *See In re Estate of Holmes,* 821 P.2d 300 (Colo.App.1991); *In re Estate of Gross,* 646 P.2d 396 (Colo.App. 1981).

The parties here do not dispute that, given the circumstances at the time the testator executed his will, his use of the terms "children, her lawful issue" and "child or children" in the will create a latent ambiguity. The probate court was, therefore, correct in receiving extrinsic evidence on this point. *See In re Estate of Holmes, supra.*

 In determining a testator's intent, a court should consider the circumstances present at the time of execution, including the relevant laws in effect at that time. *See In re Estate of Daigle,* 642 P.2d 527 (Colo. App.1982). Here, the probate court considered the state of the law in 1944 and concluded that, at that time, in order to have adopted children of other persons included within the term "children," a testator was required to so specify. We agree with this conclusion.

In *Brunton v. International Trust Co.,* 114 Colo. 298, 164 P.2d 472 (1945), our supreme court held that there is a presumption against adopted children being entitled to take under an instrument executed by a person other than the adoptive parent. The *Brunton* court concluded, therefore, that the testator's failure specifically to refer to adopted children in a trust, combined with his use of the words, "lawful issue" and "chil-

dren," evidenced an intent to exclude adopted children as trust beneficiaries.

■ Similarly, here, the language of the testamentary trust first refers to "children, her lawful issue," and then repeatedly refers to "children." Nowhere is there a reference to the adopted children of any named beneficiary.

James, however, relies on the undisputed fact that, at the time of execution of the will, the testator was aware that neither of his daughters was capable of bearing children. Yet, the trust instrument refers to a child or children of either daughter, in addition to specific references to Mary's daughter, Teddy Ann.

The probate court, however, properly considered other evidence with respect to whether the testator's intent was not to benefit adopted children. Mary testified that her father had stated that he wanted only blood relatives to inherit his estate. There was also testimony that the testator intended that Teddy Ann, and any children she might have in the future, receive the proceeds of the trust upon its termination. Based on this evidence, the court determined that the intent of the testator was not to include adopted children in his will.

The probate court's finding upon this issue is supported by the evidence, and hence, we will not disturb it. See In re Estate of Etchart v. Nelson, 179 Colo. 142, 500 P.2d 363 (1972).

Further, because the probate court was correct in ruling that any adopted child, legal or equitable, was excluded as a beneficiary of the subject trust, we need not address the court's alternate ruling that the doctrine of equitable adoption is limited to situations in which a direct inheritance from an intestate adoptive parent is involved.

### B.

James next contends that the probate court erred in concluding that, upon the death of Mary and the termination of the trust, the Mesch grandchildren will be the ultimate beneficiaries of the trust res. Rather, he argues that, because these grandchildren cannot take under the testator's will,

the testator died partially intestate, and he would, therefore, inherit a portion of the testator's estate through his mother, Jane. We disagree.

Section Second (e) of the will, quoted above, does not specifically provide for the method of distribution under those circumstances that will result upon the death of Mary. It does not address the circumstances in which there will be no living natural children of either of testator's daughters. While the Mesch grandchildren are the natural lineal descendants of testator's daughter Mary, the trust makes no specific reference to grandchildren.

However, we agree with the probate court's assessment that the testator intended that the Mesch grandchildren be the ultimate beneficiaries of the trust.

■ Generally, unless the language used by the testator indicates otherwise, the word "children" will be interpreted to mean only immediate or primary offspring, rather than grandchildren. See Wright v. Poudre Valley National Bank, 153 Colo. 255, 385 P.2d 412 (1963). However, in determining a testator's intent, a court should adopt a construction, if possible, that avoids partial intestacy. State v. Rogers, 140 Colo. 205, 344 P.2d 1073 (1959); In re Estate of Bennett, 789 P.2d 446 (Colo.App.1989).

The general rule, therefore, is subject to certain exceptions, which the probate court applied here. See Wright v. Poudre Valley National Bank, supra.

■ First, if the will is ambiguous, courts will apply a presumption against disinheritance of a grandchild whose parent is deceased. See Cox v. Forristall, 7 Kan.App.2d 275, 640 P.2d 878 (1982); Annot., Word "Child" or "Children" in Will as Including Grandchild or Grandchildren, 30 A.L.R.4th 319 (1984).

Second, in order to avoid a partial intestacy or lapse, courts have interpreted "child" to mean "grandchildren." See Annot., supra.

Further, if, as here, the court has considered extrinsic evidence of the testator's intent, it may conclude that the testator in-

tended to benefit grandchildren. *In re Works' Estate,* 168 Kan. 539, 213 P.2d 998 (1950); Annot., *supra.*

■ Here, there is no language in the trust that specifically excludes grandchildren or great-grandchildren. And, the will makes specific reference to Teddy Ann, the testator's granddaughter, and provides for Teddy Ann's benefit should her mother predecease her. Thus, as the trial court concluded, other language in the will evidences the testator's intent to benefit natural lineal descendants beyond direct offspring. *See In re Reusmann's Will,* 23 Misc.2d 602, 197 N.Y.S.2d 771 (1960); *In re Perlmutter's Will,* 156 Misc. 571, 282 N.Y.S. 282 (1935) (use of "per stirpes" rather than "per capita" implies intent to create a substitutionary gift and thus evidences testator's intent that child's share should be payable to child's living descendants).

■ Considering the ambiguity of the trust language and the court's proper consideration of extrinsic evidence that the testator intended his estate to go to Teddy Ann and her children, we conclude that the probate court correctly determined that the Mesch grandchildren were to be the sole ultimate beneficiaries of the trust.

## II.

■ James finally challenges the probate court's award of costs and attorney's fees to Mary and the Mesch grandchildren, asserting that the issue of costs and attorney's fees should have been deferred until all appeals were exhausted. He has, however, presented us with no legal authority in support of this contention, and we conclude that the probate court's award here, after the entry of final judgment, was a matter within its sound discretion. *Cf. Baldwin v. Bright Mortgage Co.,* 757 P.2d 1072 (Colo.1988).

The orders of the probate court are affirmed.

MARQUEZ and TAUBMAN, JJ., concur.