In the Matter of the ESTATE
OF Thomas E. JENKINS,
Deceased.

James T. McCLAIN, Petitioner,

v.

Mary E. TAYLOR, Terry R. Mesch, Sherry M. Mesch, Mary F. Machinal, and Gary W. Mesch, and First Interstate Bank of Denver, Respondents.

No. 94SC634.

Supreme Court of Colorado,
En Banc.

Nov. 6, 1995.

Don A. McCullough, Denver, for Petitioner.

Durham & Baron, Paul J. Hanley, Denver, for Respondents Mary E. Taylor, Terry R. Mesch, Sherry M. Mesch, Mary F. Machinal, and Gary W. Mesch.

No appearance on behalf of Respondent First Interstate Bank of Denver

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the Colorado Court of Appeals' decision in *In re*

*Estate of Jenkins,* 890 P.2d 188 (Colo.App. 1994), a case brought by James T. McClain ("McClain" or "James") claiming that he is a beneficiary of the testamentary trust created by Thomas Jenkins ("Jenkins"). The issues before us are whether Jenkins intended to include his daughter's equitably adopted[1] son, McClain, as a beneficiary of the trust and whether Jenkins' great-grandchildren were to be the ultimate beneficiaries of the trust.

The court of appeals affirmed the probate court's finding that Jenkins did not intend to include adopted children in his will and thus did not intend McClain to be a beneficiary of his testamentary trust. The court of appeals also affirmed the probate court's finding that the testator intended his lineal descendants to be the ultimate beneficiaries of his testamentary trust.

We affirm and hold that Jenkins did not intend to include McClain, an equitably adopted child, as a beneficiary of his estate. We also hold that Jenkins intended his great-grandchildren, his lineal descendants, to be the ultimate beneficiaries of his testamentary trust.

### I.

Thomas Jenkins died testate on July 14, 1946. Jenkins executed his will on June 30, 1944, and a codicil on December 4, 1944. Jenkins' will and codicil include a testamentary trust. Jenkins had two children, Mary Eliza Taylor (formerly Mary Eliza Fellow and hereinafter referred to as "Mary") and Jane McClain (formerly Jane Jenkins and hereinafter referred to as "Jane").

Jane was sterilized in 1935 or 1936 and thus bore no children in her lifetime. However, in 1949, Jane agreed with a neighbor to take in James McClain and raise him as her own son; Jane took James home when he was three days old. In all respects, the relationship between Jane and James was that of a mother and her natural child, although Jane did not legally adopt James. Jane died on May 14, 1985.

Mary had only one child, Teddy Ann Fellows ("Teddy Ann") who was born on September 10, 1935. Mary could not have any more natural children after Teddy Ann. Mary is still living. Teddy Ann died on July 17, 1991, and was survived by four children, Terry R. Mesch, Sherry M. Mesch, Mary F. Machinal, and Gary W. Mesch ("Mesch grandchildren").

The trust created by Jenkins provides for monthly payments to Jane, Mary, and Teddy Ann. The trust also states that Jane's and Mary's monthly payments shall go to their child or children in the event either of them die. The trust further provides that, upon the death of both Mary and Jane, one-half shall go to the child or children of Mary and one-half shall go to the child or children of Jane.

Except for minor modifications to his will to provide an education fund for Teddy Ann and to increase the amount of the monthly payments, Jenkins ratified and affirmed all provisions of his will on December 4, 1944, when he signed his codicil. The amount of the trust principal as of August 21, 1992, was approximately $231,444.00.

### II.

#### A.

 McClain contends that the court of appeals erred in affirming the probate court's ruling that Jenkins did not intend to include adopted children of his daughters as beneficiaries of his testamentary trust. McClain asserts that, because Jenkins knew at the time he wrote his will that his two daughters could not bear any more natural children, he must have intended to include adopted children when he used the term "children" in his will. The probate court concluded that Jenkins did not intend to include the adopted children of his daughters as beneficiaries of his trust because Jenkins did not specifically refer to such adopted

---

1. The term "equitable adoption" refers to a situation involving an oral contract to adopt a child, fully performed except that there was no statutory adoption, and in which the rule is applied for the benefit of the child in the determination of heirship upon the death of the person contracting to adopt. *Barlow v. Barlow,* 170 Colo. 465, 472, 463 P.2d 305, 309 (1969).

children in his will. The court of appeals affirmed the probate court's conclusion.

Historically, courts presumed that the testator did not intend to include adopted children if the testator was a stranger to the adoption. Courts often applied a rebuttable presumption that an adopted child could not inherit from adoptive grandparents because adopting parents should not be allowed to foist an heir onto relatives who are not parties to the adoption contract. *See, e.g., In re Eddins' Estate*, 66 S.D. 109, 279 N.W. 244 (1938). The presumption excluding adopted children yielded if there was evidence of the testator's intent to include the adopted child in the will. Today, in contrast, most jurisdictions recognize reciprocal inheritance rights between the adopted child and relatives of the adoptive parents. *See* William M. McGovern, *Wills, Trusts and Estates* § 2.2, at 47 (1988).

The issue raised in this case is whether the "stranger to the adoption" rule should apply today because it was in effect at the time Jenkins executed his will in 1944. This court has not yet addressed this issue. The few jurisdictions which have decided this issue are split. Some courts have upheld statutes that favor inclusion of adopted children. *See, e.g., Zimmerman v. First Nat'l Bank*, 348 So.2d 1359 (Ala.1977); *Haskell v. Wilmington Trust Co.*, 304 A.2d 53 (Del.1973) (*superseded by statute as stated in Annan v. Wilmington Trust Co.*, 559 A.2d 1289 (Del. 1989)); *Evans v. McCoy*, 291 Md. 562, 436 A.2d 436 (1981); *In re Sollid*, 32 Wash.App. 349, 647 P.2d 1033 (1982). Other courts have refused to include an adopted child as a beneficiary to a will on the grounds that wills should be construed by the law as it existed when the testator died. *See, e.g., Shortridge v. Sherman*, 84 Ill.App.3d 981, 40 Ill.Dec. 559, 406 N.E.2d 565 (1980), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1371, 67 L.Ed.2d 349 (1981); *Billings v. Fowler*, 361 Mass. 230, 279 N.E.2d 906 (1972).

In *In re Estate of Hughlett*, the testator was presumed to have known the law in force when the will was drafted and to have made his will in conformity with that law. *Hughlett*, 113 Ill.App.3d 910, 68 Ill.Dec. 716, 719, 446 N.E.2d 887, 890 (1983). Thus, the *Hughlett* court found that the testator did not intend to include adopted children of his beneficiaries in his will because the law at the time the will was executed presumed exclusion of adopted children. *Id.* Similarly, in *Tindol v. McCoy*, the court held that the will was to be construed by the law as it existed at the time of the testator's death. *Tindol*, 535 S.W.2d 745, 750 (Tex.Civ.App. 1976). Under the will in *Tindol*, which was probated in 1917 and did not contain any language either stating or reasonably supporting an inference that the testator intended for adopted children to take under his will, adopted children of the named beneficiary were found not to be included within the will's provisions. *Id.* We agree with the reasoning in these cases. We thus hold that wills should be construed by the law as it existed when the testator died, thereby excluding adopted children as beneficiaries unless the will indicates an intent to include adopted children.

In the instant case, the probate court determined that Jenkins did not intend to include his daughters' adopted children as beneficiaries of his testamentary trust. In making its determination, the probate court considered the law as it existed in 1944, when Jenkins executed his will. At that time, Colorado law presumed that adopted children were not included as beneficiaries unless the testator expressly included the term "adopted children" in the will. *See Brunton v. International Trust Co.*, 114 Colo. 298, 164 P.2d 472 (1945) (holding that when a testator makes provision for a child or children of another person, an adopted child of the other person is not included, unless other language in the will makes it clear that the adopted child was intended to be included). The law presumes that Jenkins knew the law in force when he executed his will and made his will in conformity with that law.

Jenkins' will does not reflect any intent to include his daughters' adopted children as beneficiaries of his testamentary trust, much less his daughters' equitably adopted children. Although Jenkins' will refers to his daughters' "children," the will does not expressly use the term "adopted children." In the absence of explicit language expressing

Jenkins' intent to include his daughters' adopted children, the law at the time Jenkins executed his will prevents including adopted children as beneficiaries to his testamentary trust. Moreover, the doctrine of equitable adoption was not recognized by Colorado until more than twenty years after Jenkins died. *See Barlow v. Barlow,* 170 Colo. 465, 463 P.2d 305 (1969). Thus, even assuming Jenkins intended to include *legally* adopted children when he referred to his daughters' children in his 1944 will, he could not have intended to include *equitably* adopted children.

■ The probate court found that Jenkins' use of the terms "children, her lawful issue" and "child or children" in his will created latent ambiguity and the court thus resorted to extrinsic evidence to determine whether Jenkins intended to include adopted children as beneficiaries of his testamentary trust. Where evidence extrinsic to the will is considered, our standard of review is whether the probate court's decision was clearly erroneous or completely unsupported by the evidence. *See, e.g., M.D.C./Wood, Inc. v. Mortimer,* 866 P.2d 1380, 1382 (Colo.1994) (holding that only when facts are presented to the trial court by uncontested documentary evidence may an appellate court draw its own conclusions); *Colorado River Water Conservation Dist. v. Municipal Subdistrict Northern Colorado Water Conservancy Dist.,* 198 Colo. 352, 355, 610 P.2d 81, 83 (1979) (holding that the clearly erroneous standard of review applies unless judgment is entered on the basis of documentary evidence alone). The probate court ruled that, based on the law at the time Jenkins executed his will, he did not intend to include adopted children in his will. We hold that the probate court's ruling was supported by the evidence and was not clearly erroneous.

## B.

■ The probate court also determined that the doctrine of equitable adoption is limited to situations where the claimant is attempting to inherit directly from an intestate adoptive parent and does not apply in cases where the claimant is attempting to take "through" the adoptive parent from a testamentary trust of another person. The court of appeals did not reach this issue because it decided that Jenkins did not intend for adopted children to share in his estate. Under the facts of this case, we agree with the probate court's finding that the doctrine of equitable adoption does not apply.

■ We held in *First National Bank of Denver v. People,* 183 Colo. 320, 324, 516 P.2d 639, 641 (1973), that the doctrine of equitable adoption applies for the benefit of the adopted child in determining heirship upon the death of the person contracting to adopt. We rejected the assertion that stepgrandchildren of the decedent could take through their mother and held that the decedent's adopted daughter could claim to come under the doctrine of equitable adoption, but that the daughter's children could not do so. *Id.* Thus, the doctrine of equitable adoption is limited to claims made by an equitably adopted child against the estate of an adoptive parent and does not extend to allow an equitably adopted child to take through the adoptive parent from the estate of a more remote ancestor. *See also Robinson v. Robinson,* 283 Ala. 257, 215 So.2d 585 (1967); *In re Estate of Olson,* 244 Minn. 449, 70 N.W.2d 107 (1955); *Menees v. Cowgill,* 359 Mo. 697, 223 S.W.2d 412 (1949); *Pope v. First Nat'l Bank,* 658 S.W.2d 764 (Tex.Ct.App.1983); *Pouncy v. Garner,* 626 S.W.2d 337 (Tex.Ct. App.1981). Accordingly, the doctrine of equitable adoption does not allow McClain to take through Jane to benefit from the estate of Jenkins.

## III.

■ McClain contends that the court of appeals erred in upholding the probate court's decision that Jenkins intended the Mesch grandchildren to be the ultimate beneficiaries of his testamentary trust. McClain asserts that, because Jenkins made no provision for the situation in which there are no living children of Jane and Mary, Jenkins died partially intestate. McClain further claims that this allows him to inherit part of Jenkins' estate through his mother Jane,

since Mary's daughter Teddy Ann is deceased.

■ Section Second (e) of Jenkins' will provides:

Upon the death of both my said daughters and when all of the living issue of both of said daughters shall have reached the age of twenty-one (21) years, then my Trustee shall divide and distribute the remainder of the trust estate to such then surviving child or children, one-half to the child or children of Mary and one-half to the child or children of Jane, such children to take equally but per stirpes and not per capita. If there be no child or children of either of my said daughters then living then all of said trust estate shall be distributed to the child or children then surviving of the other daughter.

It is true that, unless the will's language indicates otherwise, the word "children" generally will be interpreted to mean only immediate or primary offspring, rather than grandchildren. *See Wright v. Poudre Valley Nat'l Bank,* 153 Colo. 255, 385 P.2d 412 (1963). However, exceptions to this general rule are recognized if a contrary intent is manifest from other provisions of the will or from the whole testamentary scheme. *See, e.g., In re Estate of Schedel,* 73 Cal. 594, 15 P. 297 (1887); *Kolmer v. Miles,* 270 Ill. 20, 110 N.E. 407 (1915); *Bennett v. Humphreys,* 159 Kan. 416, 155 P.2d 431 (1945); *In re Estate of Grimm,* 442 Pa. 127, 275 A.2d 349 (1971).

In the instant case, the probate court determined that other language in Jenkins' will and extrinsic evidence presented at trial indicate Jenkins' intent to benefit natural lineal descendants, including his daughter's grandchildren. For example, Jenkins used the term "per stirpes" rather than "per capita" in his will, which implies Jenkins' intent to create a substitutionary gift and to make his deceased child's share payable to the child's living descendants. *See In re Reusmann's Will,* 23 Misc.2d 602, 197 N.Y.S.2d 771, 773 (1960).

■ Moreover, it is a well settled rule of construction that in determining the testator's intent, courts should adopt a construction that avoids partial intestacy. Such a construction promotes the presumption that, by executing a will, the testator intends to dispose of his entire estate. *See, e.g., State v. Rogers,* 140 Colo. 205, 344 P.2d 1073 (1959); *In re Estate of Bennett,* 789 P.2d 446 (Colo.App.1989). Jenkins' will, in fact, provides that the "rest, residue and remainder of my estate" be given to the trustee in trust. This indicates Jenkins' intent to dispose of his entire estate and avoid partial intestacy.

■ Finally, if a will is ambiguous, courts will apply a presumption against disinheritance of a grandchild whose parent is deceased. *See, e.g., Cox v. Forristall,* 7 Kan. App.2d 275, 640 P.2d 878 (1982). In this case, nothing in Jenkins' will indicates that he intended to disinherit his daughter's grandchildren in the event that none of his daughters' children remained living. For the foregoing reasons, the court of appeals correctly upheld the probate court's ruling that Jenkins intended for the Mesch grandchildren to be the ultimate beneficiaries of his testamentary trust, although this was not specifically stated in his will.

## IV.

We affirm the court of appeals' finding that Jenkins did not intend to include an adopted child as a beneficiary of his estate. We also affirm the holding that Jenkins intended for his lineal descendants to be the ultimate beneficiaries of his testamentary trust.

